**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| LaShawnna Ridley and Tiffany Hines (STAKE.US USERS WITHIN THE UNITED STATES), Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- v -<br><br>SWEEPSTEAKS LTD. d/b/a STAKE.US, AUBREY DRAKE GRAHAM p/k/a DRAKE, ADIN ROSS, AND GEORGE NGUYEN,<br><br>Defendants. | Civil Acton No. 25-2511<br><br>**CLASS ACTION COMPLAINT<br>AND DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs LaShawnna Ridley and Tiffany Hines ("Plaintiffs"), by and through their attorneys, bring this action individually and on behalf of all others similarly situated (the "Class"), against Defendants Sweepsteaks Ltd. d/b/a Stake.us ("Stake.us"), Aubrey Drake Graham p/k/a Drake ("Drake"), Adin Ross ("Ross"), and George Nguyen ("Nguyen"), (collectively, "Defendants"). Plaintiffs make the following allegations upon information and belief (except those allegations as to the Plaintiffs or their attorneys, which are based on personal knowledge).

**NATURE OF THE ACTION**

1.      This consumer class action seeks to stop Stake.us – an illegal online gambling platform promoted by Drake, Ross and Nguyen, and used by Drake, Ross and Nguyen to obscure transmissions of money in furtherance of their ongoing music botting campaigns – from continuing to prey upon consumers, and to impose civil penalties on all Defendants to deter future misconduct.

2.      Stake.us[1], a U.S. storefront for Stake.com, has been operating as one of the largest and most profitable illegal online casinos since at least 2022.

3.      Stake.us was created and marketed to U.S. customers as a "social casino" that purportedly does not permit "real money gambling," to bypass applicable United States federal and Commonwealth of Virginia gambling regulations.

4.      Attempting unsuccessfully to hide behind the façade of a "safe and free gambling experience," Stake.us misrepresents itself to regulators and consumers; in reality, it operates as an illegal online casino.

5.      Stake.us offers nearly 2,000 casino games and permits players to place bets using specialized casino chips, and to cash out their winnings.

6.      Stake.us offers two types of virtual currency: Gold Coins and Stake Cash.  Gold Coins have no monetary value and cannot be converted into real money.  However, Stake Cash can be redeemed for cryptocurrency or digital gift cards at a rate of 1 Stake Cash to 1 United States Dollar.  Stake.us bundles every purchase of Gold Coins with Stake Cash. Thus, when a player purchases Gold Coins to engage in casino games, they are also purchasing Stake Cash. If a player is lucky and wins, they can cash out their Stake Cash for cryptocurrency. But if a player loses their Stake Cash and wishes to continue gambling, they must buy more worthless Gold Coins, which will be bundled with more Stake Cash.

7.      Defendants Drake and Ross are paid by Stake to promote the platform. The two have engaged in live-streamed gambling, wagering large sums of money that was provided surreptitiously by Stake. In other words, though Drake and Ross purported to be gambling with their own Stake Cash, it was in fact provided to them by the house.

---

[1] Stake.com and Stake.us are referred to together herein, where applicable, as "Stake."

2

8. Through these and other promotions, Stake has bombarded consumers with advertisements appearing on social media platforms, depicting its games as safe, legal, and fun. But these casino games are illegal in Virginia and throughout the United States, and have inflicted harm on consumers across the Commonwealth who have lost real money chasing gambling wins on the Stake platform.

9. Defendants Drake, Ross, and Nguyen have also made use of Stake, including through its U.S. storefront Stake.us, to directly transfer money between and among themselves, using Stake's "Tipping" program – an unlimited and wholly unregulated money transmitter that appears to exist outside the oversight of any financial regulator. Defendants have utilized Stake's Tipping program to, *inter alia*, transfer gambling proceeds wagered through on the Stake platform.

10. In addition, through Stake's Tipping function, Defendants have financed their combined artificial streaming ("botting") to create fraudulent streams of Drake's music; fabricate popularity; disparage competitors and music label executives; distort recommendation algorithms; and distribute financing for all of the foregoing, while concealing the flow of funds.

11. At the heart of the scheme, Drake – acting directly and through willing and knowledgeable co-conspirators – has deployed automated bots and streaming farms to artificially inflate play counts of his music across major platforms, such as Spotify. These inauthentic streams, injected via interstate digital pathways, were calibrated to mislead royalty and recommendation engines; manufacture popularity; distort playlists and charts; and divert both value and audience attention. In tandem, this manipulation has suppressed authentic artists and narrowed consumers' access to legitimate content by undermining the integrity of curated experiences.

12.    Stake.us's user-to-user Tipping and encrypted internal transfer mechanisms have fueled and enabled payments to bot operators and amplifiers to be hidden from public or regulatory view.

13.    One example of a publicly documented large-value tip is a $100,000 "Tipping" transfer between Defendants Drake and Ross in 2023.

14.    In December 2024, Drake gave away large sums of money in partnership with Ross and Stake as part of his "Drizzmas Giveaway."

15.    These Tips, and many others like them, cycled among Defendants Drake, Ross, and Nguyen – underwriting botting and paid engagement campaigns.

16.    Days before the filing of this complaint, Defendant Drake gave Defendant Ross a $220,000 car as a gift.

17.    Stake.us' platform's design, which masks counterparties and camouflages withdrawals as generic transactions, stymy scrutiny and obstruct tracing of illicit proceeds.

18.    "Tipping" proceeds and other transfers on and from Stake.us went, directly or indirectly, from Defendant Drake to, through, or with the knowledge and assistance of Defendant Ross, and on from there to Defendant Nguyen.  Nguyen served as a facilitator and operational broker– alternately converting Stake-based cryptocurrency to cash, or receiving cash from Stake-transferred cryptocurrency proceeds. From there, Nguyen interfaced with bot vendors, supervised coordinated amplification strategies, and integrated paid "clipping" campaigns.

19.    The "clipping" campaigns were facilitated through the Clipping service and affiliated networks on the X (formerly Twitter), Discord and Kick platforms. Kick, in turn, is a betting platform financially underwritten by the founders of Stake. Public posts, chat logs, leaked communications and other records document Nguyen's direct handling of funds through multiple

payment platforms, orchestration of narrative surges, and amplification alongside– and as an instrument of – Drake and Ross.

20.     Plaintiffs and the Class are Stake.us users who have been misled by Stake.us' misrepresentations that Stake.us is a legal, harmless, and safe gaming site, when it is in fact not legal, not harmless, and not safe.  Stake.us preys on consumers in Virginia and nationwide who are lured into real money gambling, exposing consumers to substantial risks of gambling addictions and jeopardizing their and their families' financial well-being. Each of the Plaintiffs was influenced to participate and to continue to participate after their initial participation on the Stake platform by the online promotional activities of Defendant Drake as viewed by each of the Plaintiffs.

21.     Plaintiffs have been further damaged by the false marketing manipulations and abuses of Defendant Drake, who, by his own public announcements, has been paid some $100,000,000 per year to promote Stake, as well as Defendants Ross and Nguyen, who have participated directly in the marketing of Stake.us, as documented in their many online posts across multiple platforms advertising and endorsing Stake.

22.     Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)–(d), and the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 et seq. Plaintiffs seek damages, treble damages under RICO, restitution and disgorgement, injunctive and declaratory relief, attorneys' fees and costs, and all other relief deemed just and proper.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs; members of the

Class are citizens of States different from any Defendant; and Plaintiffs are citizens of the Commonwealth of Virginia.

24.    This Court also has subject-matter jurisdiction pursuant to  28 U.S.C. § 1331 because Plaintiffs assert claims arising under RICO, 18 U.S.C. § 1962(c). The Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367(a).

25.    This Court also has jurisdiction under 18 U.S.C. § 1964(c).

26.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiff resides in this District, and upon information and belief, innumerable other potential members of the Class reside in this  District and Division.

27.    The Court has personal jurisdiction over Defendants because they transacted business, committed tortious acts, and caused injury in this District, and purposefully directed the conduct at issue here through interstate wires and platforms accessible and operated in this District.

## PARTIES

28.    Plaintiffs and the Class of Stake.us users within the United States, including in the Eastern District of Virginia, who, during the relevant period, were misled by the marketing practices of Defendants and were induced to participate in unlawful gambling on the Stake platform. Plaintiffs and the class suffered substantial financial and economic harm as alleged herein.

29.    Defendant Sweepsteaks Ltd. d/b/a Stake.us is a Cyprus Limited Company with its principal place of business located at 28 Oktovrio, 313 Omrania BLD, Limassol, CY-3105, Cyprus. Sweepsteaks also operates a U.S. office at 13101 Preston Road, Suite 110-5027, Dallas,

TX 75240. Through its website and brand Stake.us, corresponding advertisements and promotions, including targeted advertisements, Stake.us intentionally conducts business in Virginia.

30.    Defendant Aubrey Drake Graham, p/k/a "Drake," is a Canadian domiciliary. At all relevant times, Drake engaged in nationally promoted live streams and financial promotions connected to Stake.us that reached this District, and caused the other harms to Class Members residing within this District as described herein.

31.    Defendant Adin Ross is an online media personality and streamer who, at all relevant times, coordinated live streams and promotions on platforms accessible within this District, including streams featuring Stake.us Tipping, while maintaining close relationships with Drake and Nguyen relevant to the conduct alleged.

32.    Defendant George Nguyen is, upon information and belief, an Australian national residing in New South Wales who, at all times relevant, operated or co-founded entities or ventures including "Weekdays/Weekdays Capital" and "Clipping," and used online aliases including "Grand Wizard." Nguyen coordinated botting facilitation and paid amplification across U.S.-facing platforms and transacted in payments masked through Stake.us and Stake.com, including through their "Tipping" features, in connection with the same.

## FACTUAL ALLEGATIONS

### A.  Stake.us's Illegal Gambling Operation

33.    Stake.us has operated, since at least 2022, one of the largest and most profitable illegal online gambling operations, while Defendants Drake, Ross, and Nguyen promote the illegal casino to consumers and enable recruitment of new American players.

34.    Stake.com is banned from operating in Virginia, and indeed anywhere in the United States. Stake.us was created by Stake.com's founders to bypass such restrictions.

35.    Stake.us is almost identical to Stake.com as both websites offer the same or substantially the same content, including online casino games such as slots, table games, and live dealer games. Additionally, both offer Gold Coins and Stake Cash.

36.    Stake.us encourages users to play the casino games advertised on its website and users are allowed to cash out for digital gift cards or cryptocurrency.

37.    Despite offering online casino games, Stake.us holds itself out in its Terms and Conditions as a platform that does "not offer real money gambling" and claims that "no purchase or payment is necessary to participate or play [Stake.us] games."

38.    The Stake.us homepage claims it provides "the ultimate social, safe and free gaming experience."

39.    However, these representations are misleading as players are encouraged to wager Gold Coins or Stake Cash, or some combination of both, on the casino games, confusing consumers into believing they are participating in harmless and free gaming, when in fact, they are participating in gambling.

40.    Here's how it works: Stake offers users two types of virtual currency: Gold Coins and Stake Cash. Gold Coins do not have monetary value and are described by Stake as solely for entertainment purposes. Stake Cash, on the other hand, can be cashed out at a one-to-one exchange rate for US dollars and thus serves as the currency with which most bets are made.

41.    Users can buy Gold Coins or earn them through various promotions, and Stake characterizes Gold Coins as the primary currency for casual gameplay. With each purchase of Gold Coins, however, Stake bundles a set quantity of Stake Cash, which has actual monetary value and is the true currency with which Stake users place bets. Indeed, for every dollar spent on purchasing Gold Coins, Stake bundles a nearly equivalent amount of Stake Cash. For example, as

of the date of this Complaint, a user could purchase 200,000 Gold Coins and $20.05 in Stake Cash for $20 USD.

42.    The Stake.us platform allows users to play casino games, such as roulette and virtual slot machines, which are pure games of chance. The outcome of these games is determined by random number generators. Users may bet Stake Cash on these online casino games with the prospect of a large payout—often many multiples of what was bet. Stake's virtual casino games involve no skill or strategy.

43.    Stake.us also features live dealer games, which allow users to "interact with human dealers" and experience "what it would be like to be at a land-based casino while you're sitting comfortably at home behind your computer screen or on your mobile device."[2] Stake's live dealer games are filmed in a studio and players may bet on the results—for example, of the spin of a roulette wheel or the next Blackjack card. Stake's live dealer games, like their counterpart in a brick and mortar casino, are games of chance.

44.    Stake.us thus generates revenue from unwitting, and often vulnerable, American consumers – incentivizing Stake.us to continually deceive American consumers and regulators.

45.    Stake.us conducts an illegal gambling business within the meaning of 18 U.S.C. § 1955, including by operating casino-type wagering in violation of multiple state laws, involving five or more persons, and in substantially continuous operation with substantial daily revenue.

46.    Publicly filed civil enforcement and consumer actions across multiple states accuse Stake.us of unlawful gambling operations, including: Minnesota (Case No. 0:25-cv-3280, filed Aug. 15, 2025), South Carolina (Case No. 3:25-cv-09641-SAL, filed Aug. 4, 2025), Massachusetts (Case No. 1:25-cv-11481-RGS, filed May 23, 2025), Alabama (Case No. 3:25-cv-00345-RAH-

---

[2] https://stake.us/blog/how-to-play-live-dealer-games.

KFP, filed May 23, 2025), Illinois (Case No. 1:25-cv-03736, filed Apr. 7, 2025), and California (Case No. 8:25-cv-00302-JVS-ADS, filed Feb. 14, 2025). These allegations are pleaded not for the truth of the underlying claims, but to demonstrate Stake's role, intent, common purpose, and the predicate acts – showing continuity of racketeering activity (including 18 U.S.C. § 1955) within the last ten years.

47.    Stake's online operations also violate Virginia law, which prohibits online gaming. By providing a freely accessible online gambling forum accessible to consumers in the Commonwealth, Stake is flagrantly violating Virginia law and jeopardizing the health and safety of Virginia residents.

**B. Stake.us's Deceptive Marketing Practices and the Role of Drake, Ross, and Nguyen**

48.    Stake.com, originally created as an online cryptocurrency casino, that could be accessed (albeit unlawfully) by consumers in the United States by use of a VPN, obscuring the users' true locations.

49.    Stake.com's founders later developed Stake.us, an almost identical version of Stake.com, to further entrench itself as an online casino platform in the United States.

50.    Stake.us advertises that its "social casino" offers a "safe and free gaming experience."

51.    This misleading statement deceives consumers into believing that they are participating in harmless gameplay, when in fact, they are being lured into real money gambling.

52.    Drake, Ross, and Nguyen have been zealous promoters of Stake. Drake has been paid, by his own admission, $100,000,000 per year, for his promotional services.

53.    Drake, Ross, and Nguyen have further incentive to promote —and mask the true nature and extent of their conduct on and around—Stake. Since at least 2022, Drake and those

acting under his direction-including Ross and Nguyen-- have made use of Stake.com and Stake.us to covertly finance the orchestrated procurement of botting and streaming farm activities to artificially inflate the number of plays attributed to Drake's catalogue across major digital streaming services such as Spotify. Stake.us facilitates this covert financing scheme through its user-to-user "Tipping" and internal transfers that effectively obscure the identities of counterparties. Through these mechanisms, withdrawals are recorded merely as Stake transactions, concealing their true origins and recipients. These transactional features enable the concealment, covert routing, and disbursement of funds to bot operators, intermediaries, and amplifiers integral to sustaining and expanding the artificial streaming and amplification operations.

54.     For these reasons, among others, Drake and Ross maintain a monetized and closely intertwined relationship with Stake.us. Drake and Ross have exchanged high dollar amount (above U.S. Currency Transaction Report thresholds) "Tips" during live streams, including a widely publicized six-figure transaction. These live streams are also used to promote Stake and push its gambling services onto Drake and Ross's millions of online followers.

55.     Specifically, one Kick livestream captured exchange of a $100,000 "Tip" among Drake and Ross via Stake, with another instance evidencing a $10,000 "Tip." Additional stream recordings reveal reiterated substantial exchanges between Drake and Ross routed through Stake, with ongoing streams of funds, on information and belief, totaling in the millions of dollars— amounts which, upon information and belief, have underwritten continued botting and amplification efforts.  Just days before this complaint was filed, Defendant Drake gifted a $220,000 car to Defendant Ross.

56.     Payments between Drake and Ross extended beyond direct exchanges. Public records and leaked communications reveal intermediary transfers to bot vendors and logistics

facilitators, including Nguyen, a known recipient of payments linked to clipping and amplification campaigns. Portions of funds transmitted through Stake's Tipping and internal transfers passed through to bot vendors and amplification intermediaries to perpetuate and scale manipulation activities.

57.    Nguyen, known in online forums as "Grand Wizard," "Grand Wizard Chat N***a," or "Grand Wizard CN" functioned, and appears to continue to function, as a broker and operational facilitator for these schemes. He is publicly connected to Weekdays/Weekdays Capital and the Clipping service, which orchestrated paid "clipping" campaigns intrinsically tied to streaming numbers and influencer content, including campaigns involving Drake and Ross.

58.    Nguyen actively promoted and participated in the Clipping Discord server and received direct payments both from Clipping administrators and separately from other co-conspirators.

59.    Nguyen's public posts include corroboration by Ross, who on-stream declared: "I'm friends with Grand Wizard… that's my dog," while tagging Drake's account.

60.    Drake has bet large sums on Stake and livestreamed the event, further promoting Stake to his millions of followers. Stake.us publicly stated that Drake "has been a long-time member of the Stake community," and ultimately a "partnership was formed" in which "a new gaming experience" will allow users to "have a chance to win big along side Drake. This type of giveaway will be on a magnitude unseen before."[3]

61.    Drake's "Journey from a Player to a Partner" is documented on Stake's web properties, while Drake's social media accounts identify his partnership with Stake.

---

[3] https://www.gamblingcommission.gov/uk/public-and-players/guide/return-to-player-how-much-gambling -machines-payout.

62.     During livestreamed events, Drake and Ross have made large bets on Stake using house money provided by Stake. This conduct simply encourages and influences the large fan base of Drake and Ross to make similarly large and/or unwise bets—yet using Stake Cash they purchased themselves.

**D. Consumer Harms**

*Economic Overcharge and Loss of the Benefit of the Bargain.*

63.     Stake.us, a website developed based on Stake.com, misrepresents to consumers that it offers safe, free, and legal gaming services, when in fact, it functions as an illegal online casino.

64.     Stake characterizes itself as a "Social Casino," which is intended to misrepresent the legality of the platform's operations. According to Stake, "A Social Casino refers to an online platform that offers casino-style games for entertainment purposes, without involving real money. Instead, we use tokens (Gold Coins and Stake Cash). Users can enjoy a variety of casino games, such as slots, roulette and blackjack, but with the use of virtual currency—tokens—rather than real money."[4]

65.     This is demonstrably false. Stake.us offers traditional casino games to its users, providing the option to place bets and cash in winnings.  Stake.us consumers can receive Gold Coins or Stake Cash, or a combination of the two, to continue wagering bets on Stake.us' website. Stake Cash is purchased using cryptocurrency and its value is pegged to the US dollar. If a user wins their bet, they can cash out Stake Cash for real money.

66.     Such misrepresentations that Stake.us is not a casino when in fact it functions as one, prey on consumers, particularly those who are prone to gambling addiction.

---

[4] https://help.stake.us/en/articles/8570538-what-is-a-social-casino-and-sweepstakes.

67. By masking its real money gambling platform as a free and safe "social casino," Stake and Defendants create a predatorial gambling environment, deliberately misleading consumers and exposing consumers to the risks of gambling addiction and jeopardizing the financial well-being of consumers and their families.

68. Stake further misleads consumers by identifying in its terms of service certain states where its use is prohibited. Virginia is not among the states identified in this list, thus leaving the impression that using Stake is permissible in Virgina.

69. Plaintiffs have been damaged by the false marketing manipulation and abuses of Defendants Drake, Ross, and Nguyen, who participate in the marketing of Stake.

70. Defendants Drake, Ross, and Nguyen's scheme has caused damage to Plaintiffs who were manipulated into signing onto and transacting on Stake.us based upon Defendants Drake, Ross, and Nguyen's representations.

**E. Continuity and Ongoing Threat**

71. The enterprise has operated as a continuous, coordinated unit since at least 2022, defined by explicit roles: Stake.us is an illegal online casino, earning profit by selling consumers Gold Coins and Stake Cash, and serving as a transactional infrastructure for routing, concealing, and distributing funds via Tipping; Drake is a paid promoter and spokesperson for Stake, and financed, directed and reaped the benefits of streaming and social media manipulation; Ross is also a paid promoter for Stake, and amplified  Stake.us as a casino and covert payment conduit; Nguyen was also paid to promote Stake, and received money through Stake to broker, coordinate, and operate through bot vendors and clipping channels to artificially boost Drake's streams. The scheme has been executed on an ongoing basis, persistently, since at least 2022, and remains an ongoing and imminent threat of racketeering activity.

**Additional Allegations Related to RICO Violations**

**1. The Enterprise and Its Participants**

72.     Defendants Stake.us, Drake , Ross, and Nguyen , together with bot vendors, streaming-farm operators, and other facilitators known and unknown, associated to form an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4).

73.     The Enterprise's common purpose was to: facilitate illegal online gambling, and to conceal, route, and distribute proceeds of the scheme through Stake.us's pseudo-anonymous payment rails; using proceeds and other funds to enrich themselves and artificially inflate streaming counts for Drake's catalog.

74.     Roles and relationships were stable and continuous: Stake at all times served as a gambling platform and money transfer conduit through which payments could be concealed; Drake was paid to promote Stake and made and received payments through Stake, and directed and benefited from artificial streaming and narrative amplification; Ross was paid to promote Stake and financed, promoted, and facilitated the routing of value—including via public and private "tipping" and large-value transfers on Stake—while coordinating amplification with Nguyen; Nguyen further promoted Stake, sent and received payments through its Tipping system, and brokered and interfaced with bot vendors and paid amplification pipelines (including through Weekdays/Weekdays Capital and the Clipping service).

75.     The Enterprise engaged in and affected interstate and foreign commerce through the use of nationally accessible platforms, interstate wires, and cross-border payment and settlement networks.

### 2. Scheme and Racketeering Acts

#### Operation of an Illegal Gambling Business

76.     Within the past ten years, Stake.us has been accused in multiple civil enforcement and consumer actions of operating unlawful gambling businesses in U.S. jurisdictions. These allegations are pleaded not for their truth, but to show Stake.us's role, capacity, and propensity within RICO's ten-year window. The Enterprise leveraged Stake.us's platform and rails to facilitate and conceal scheme proceeds and to compensate participants.

#### Additional Use of Financial Institutions

77.     In executing and concealing the scheme, the Enterprise utilized domestic and foreign financial institutions and processors to obtain, move, and disguise funds by means of materially false pretenses and omissions regarding the nature and purpose of transactions.

### 3. Continuity and Pattern

78.     The predicate acts were related in purpose, results, participants, victims, and methods; were repeated across releases, campaigns, and accounting periods; and present a threat of continued racketeering activity. The Enterprise functioned as a continuing unit since at least 2022.

#### CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action individually and on behalf of a class of similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

80.     Plaintiffs seek to represent the following classes or persons:

All persons in the United States who created an account on or accessed Stake.us and who purchased Gold Coins bundled with Stake Cash and made and lost one or more wagers using Stake Cash within the last three years.

81.     In the alternative, Plaintiffs seek to represent the following classes or persons:

All persons in Virginia who created an account on or accessed Stake.us and who purchased Gold Coins bundled with Stake Cash and made and lost one or more wagers using Stake Cash within the last three years.

82.    Excluded from the Class are Defendants, their officers, directors, and affiliates, and any judicial officer assigned to this matter and their immediate families.

83.    Plaintiffs reserve the right to amend or modify the Class definition in connection with their motion for class certification, as a result of discovery, at trial, or as otherwise allowed by law.

84.    Plaintiffs bring this action individually and on behalf of all others similarly situated because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**Numerosity**

85.    The potential members of the Class, and each of the sub-classes independently, are so numerous that joinder of all the members is impracticable. While the precise number of members of the Class, or each of the sub-classes, has not been determined, Plaintiffs are informed and believe the Class, and each of the sub-classes, includes at least thousands of individuals.

86.    Based on information and belief, Stake.us online records will evidence the number and identity of Class members.

**Commonality and Predominance**

87.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

(a) Whether Defendants engaged in unfair or deceptive business practices by making the misrepresentations and omissions as described herein;

(b) Whether Stake.us constitutes an illegal gambling platform in violation of United States and Virginia law;

(c) Whether Defendants' conduct constitutes predicate acts of monetary transactions in criminally derived property, or other racketeering activity under RICO and the relevant statutory schemes;

(d) Whether Defendants were unjustly enriched by proceeds routed through the coordinated scheme;

(e) Whether liability and damages can be established with common proof through platform data, financial tracing, and expert analysis; and

(f) Whether injunctive, declaratory, or other class wide relief is necessary and appropriate to prevent recurrence of the described conduct.

**Typicality**

88.    The claims of Plaintiffs are typical of the claims of the Class. Plaintiffs and all members of the Class sustained injuries and damages arising out of, and caused by, the same common course of conduct in violation of law.

**Adequacy of Representation**

89.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Counsel who represents Plaintiffs are competent and experienced in litigating large consumer class actions.

**Superiority of Class Action**

90.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each member of the Class has been damaged and is entitled to recovery because of Defendants' unlawful actions and/or practices described herein. There are no individualized factual or legal issues for the Court to resolve that would prevent this case from proceeding as a class action. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**Violation of RICO 18 U.S.C. § 1962(c)**
**Participation in an Unlawful Enterprise Through a Pattern of Racketeering Activity**
**(Against All Defendants)**

91.     Plaintiffs reallege the preceding Paragraphs as if alleged herein.

92.     Defendants associated together with others known and unknown to form an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4), with a common purpose to: operate and facilitate an illegal online gambling platform.

93.     Each Defendant conducted or participated, directly or indirectly, in the Enterprise's affairs through a pattern of racketeering activity affecting interstate and foreign commerce, including:

- Leveraging Stake.us's unlawful gambling-related operations as a conduit within the last ten years, as reflected in public enforcement and consumer actions, to

facilitate and conceal the scheme in violation of 18 U.S.C. § 1955 and to establish continuity of racketeering conduct.

94.    The predicate acts are related in purpose, results, participants, victims, and methods and amount to continued criminal activity across multiple years and release cycles, posing a threat of continued racketeering activity.

95.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiffs and the Class suffered injury to business or property, including loss of the benefit of their bargain, and loss of money and/or property.

96.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the Class seek treble damages, costs, and reasonable attorneys' fees.

## COUNT II
### RICO Conspiracy, 18 U.S.C. § 1962(d)
### (Against All Defendants)

97.    Plaintiffs reallege the preceding Paragraphs as if alleged herein.

98.    Defendants knowingly agreed and conspired that one or more of them would conduct or participate in the Enterprise's affairs through a pattern of racketeering activity.

99.    Overt acts in furtherance include dissemination of coordinated narratives and the routing and concealment of payments via Stake.us "tipping" and internal transfers.

100.    Plaintiffs and the Class suffered injury by reason of Defendants' § 1962(d) violation and seek treble damages, costs, and fees under 18 U.S.C. § 1964(c).

## COUNT III
### Virginia Consumer Protection Act (VCPA), Va. Code § 59.1-196 et seq.
### (Against All Defendants)

101.    Plaintiffs reallege the preceding Paragraphs as if alleged herein.

102.    Defendants engaged in deceptive and misleading acts and practices in connection with consumer transactions affecting Virginia residents, including by misrepresenting the Stake platform as a safe, harmless, and legal platform, when it in fact constitutes an illegal gambling platform.

103.    Defendants' conduct constitutes misrepresentations and omissions of material facts, false representations as to characteristics, standard, and qualities of the services consumed, and deception likely to mislead reasonable consumers, in violation of the VCPA.

104.    Plaintiffs and the Class suffered ascertainable losses as a result of Defendants' violations, including overpayments and loss of the benefit of their bargain.

105.    Plaintiffs seek statutory damages, actual damages, treble damages where authorized for willful violations, injunctive relief, attorneys' fees, and costs.

## PRAYER FOR RELIEF

106.    WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment in their favor and against Defendants and award the following relief:

a) Certifying this action as a class action pursuant to Fed. R. Civ, P.  23(a), 23(b)(2), and/or 23(b)(3); appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; and directing appropriate notice to the Class;

b) Awarding all available damages, not less than $5,000,000, including statutory, compensatory, consequential, punitive, and enhanced  damages and attorneys' fees where authorized by law (including under 18 U.S.C. § 1964(c) and the VCPA);

c) Ordering restitution and disgorgement of amounts wrongfully obtained by Defendants;

d) Entering injunctive and declaratory relief to prevent further unlawful conduct;

e) Awarding pre- and post-judgment interest, attorneys' fees, and costs as permitted by

law; and

f) Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

107.    Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

Plaintiffs By Counsel


IMPRESA LEGAL GROUP


 */s/ George E. Kostel*
George E. Kostel, Esq. (VSB # 34757)
Richard K. Kelsey, Esq. (VSB # 44232)
Impresa Legal Group
3101 Wilson Blvd., Suite 500
Arlington, VA 22201
Tel: (703) 842-0660
Fax : 703-243-8696
Email:  georgekostel@impresalegal.com
Email:  richkelsey@impresalegal.com


LAW OFFICES OF KIMBERLY HINKLE


 /s/ Kimberly D. Hinkle
Kimberly D. Hinkle (Bar No. 20936) (*pro hac vice to be filed)*
13920 N Western Avenue
Edmond, OK 73013
Tel: (405) 639-8150
Email:  kim@khinklelaw.com

*Counsel for Plaintiffs*