**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| LaShawnna Ridley, Regina Ridley, Tiffany Hines, Stephine Hines, Preddy Ray, Dekeya Adams, Ricola Lawshea, and Latosha Sanderlin (STAKE.US USERS WITHIN THE UNITED STATES), Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SWEEPSTEAKS LTD. d/b/a STAKE.US, KICK STREAMING PTY LTD., AUBREY DRAKE GRAHAM p/k/a DRAKE, ADIN ROSS, AND GEORGE NGUYEN.<br><br><div align="center">Defendants.</div> | Civil Action No. 1:25-cv-2511-LMB-WEF |

**DEFENDANT STAKE.US'S MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

**TABLE OF CONTENTS**

<div align="right">

**Page**

</div>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

      A.      Stake.us's Services.................................................................................... 2

      B.      Stake.us Users Are Bound By The Terms ................................................ 2

            1.      Users Must Agree to Stake.us's Terms to Access the Platform ................ 2

            2.      Stake.us Users Are Periodically Required to Accept Updated Terms ......................................................................................................... 5

      C.      The Terms Contain A Binding Arbitration Agreement ........................................ 6

III.    ARGUMENT......................................................................................................... 8

      A.      The Arbitration Agreement Is Enforceable Against Plaintiffs .............................. 8

      B.      The Arbitration Agreement Encompasses Plaintiff's Claims............................. 11

            1.      The Arbitration Agreement Delegates Threshold Issues of Arbitrability to an Arbitrator..................................................................... 11

            2.      Plaintiffs' Illegality and Public Policy Arguments Are Delegated and Fail on the Merits ................................................................. 12

                  a.      Plaintiffs' Enforceability Arguments Are Delegated.................. 13

                  b.      Plaintiffs' Enforceability Arguments Fail................................... 14

             3.      The Claims Fall Within the Arbitration Agreement's Broad Scope........ 15

      C.      The Court Should Stay This Action and Compel Arbitration............................. 16

IV.     CONCLUSION.................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarao v. MOL Ship Mgmt. Co.*,
675 F.3d 355 (4th Cir. 2012) ...................................................................................................15

*Am. Eagle Motors, LLC v. Copart of Conn., Inc.*,
No. 1:22-CV-656(RDA/JFA), 2023 WL 123503 (E.D. Va. Jan. 5, 2023) ..............................10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)...............................................................................................................16

*Austin v. Experian Info. Sols., Inc.*,
148 F.4th 194 (4th Cir. 2025) ................................................................................................10

*Boyle v. Sweepsteaks Ltd.*,
No. 25-cv-00302, 2025 WL 1674480 (C.D. Cal. May 19, 2025)...........................................13

*Brenco Enters., Inc. v. Bitesquad.com, LLC*,
297 F. Supp. 3d 608 (E.D. Va. 2018) ....................................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)...............................................................................................................13

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).................................................................................................................8

*Dhruva v. CuriosityStream, Inc.*,
131 F.4th 146 (4th Cir. 2025) ..................................................................................................9

*Drews Distrib., Inc. v. Silicon Gaming, Inc.*,
245 F.3d 347 (4th Cir. 2001) .................................................................................................16

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995).................................................................................................................8

*Fisher v. Prudential-Bache Sec., Inc.*,
831 F.2d 290 (4th Cir. 1987) .................................................................................................14

*Hall v. State Emps. Credit Union of Md.*,
No. MJM-23-2885, 2025 WL 903850 (D. Md. Mar. 25, 2025) ..............................................9

*Hall v. Sweepsteakes Ltd.*,
No. 3:25-cv-345-RAH, 2026 WL 701560 (M.D. Ala. Mar. 12, 2026)...........................2, 10, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)..................................................................................................8, 11

*Hosseini v. Upstart Network, Inc.*,
   No. 19-CV-704, 2020 WL 573126 (E.D. Va. Feb. 5, 2020)................................................9, 11

*Innospec Ltd. v. Ethyl Corp.*,
   No. 3:14-CV-158-JAG, 2014 WL 5460413 (E.D. Va. Oct. 27, 2014) ...................................14

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
   863 F.2d 315 (4th Cir.1988) ...............................................................................................16

*Jeske v. Brooks*,
   875 F.2d 71 (4th Cir. 1989) .................................................................................................14

*Kiser v. Truist Fin. Corp.*,
   796 F. Supp. 3d 207 (E.D. Va. 2025) .....................................................................................9

*M.M. v. Sweepsteakes Ltd.*,
   No. CV 25-11481-RGS, 2025 WL 3240413 (D. Mass. Nov. 20, 2025).......................2, 11, 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)............................................................................................................16

*Montoya v. King.com Ltd.*,
   No. 3:23CV3142, 2024 WL 1680028 (E.D. Va. Apr. 18, 2024)............................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)..................................................................................................................8

*Murray v. United Food & Com. Workers Int'l Union*,
   289 F.3d 297 (4th Cir. 2002) .................................................................................................8

*Naimoli v. Pro-Football, Inc.*,
   120 F.4th 380 (4th Cir. 2024) ................................................................................................9

*Reel v. Anderson Fin. Servs., LLC*,
   No. 5:07CV00080, 2008 WL 53222 (W.D. Va. Jan. 2, 2008) ..............................................13

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010)....................................................................................................11, 12, 13

*Rsch. & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*,
   182 F. Supp. 3d 556 (E.D. Va. 2016) ...................................................................................15

*Sellers v. JustAnswer LLC*,
   73 Cal. App. 5th 444 (2021) ................................................................................................10

iii

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)................................................................................14

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)................................................................................17

*Snowden v. CheckPoint Check Cashing*,
    290 F.3d 631 (4th Cir. 2002) ................................................................13

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)..................................................................................8

**Statutes**

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*........................................... *passim*

Racketeer Influenced and Corrupt Organizations (RICO) Act...............................12, 14

**Other Authorities**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards .....................14, 15

Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures R-
    7(a) (2022); ................................................................................................12

## I.    INTRODUCTION

This dispute does not belong in court.  Through this lawsuit, LaShawnna Ridley, Regina Ridley, Tiffany Hines, Stephine Hines, Preddy Ray, Dekeya Adams, Ricola Lawshea, and Latosha Sanderlin ("Plaintiffs") seek various remedies for harm they allegedly suffered by using the Stake.us platform (the "Platform").[1]  Although Plaintiffs affirmatively admit that they all "signed up for Stake accounts," *see* First Amended Complaint ("FAC"), ECF No. 9 ¶¶ 14, 88, they fail to mention that the act of "sign[ing] up for Stake accounts" necessarily entails agreeing to Stake.us's Terms and Conditions (the "Terms"), under which they promised to arbitrate any dispute with Stake.us related to its platform.  Those Terms control here.

At all relevant times, Plaintiffs could only have accessed the Platform after agreeing to the Terms through straightforward methods of notice and assent.  Depending on the date that each Plaintiff "signed up," as a necessary technical predicate to accessing the Platform, each Plaintiff had to either (1) click a "Play Now" button immediately next to a clear disclosure that taking that step constitutes assent to the Terms, or (2) scroll through the full text of the Terms and check a box confirming: "I have read and agree to the Terms and Conditions."  The Terms include an unambiguous—and mandatory—agreement to arbitrate any dispute related to a user's "Participation in or other access to or use of the Games or the Platform."[2]  They also offer users the opportunity to opt out of the arbitration agreement within 30 days of acceptance, but none of the Plaintiffs availed themselves of that opportunity.  Consequently, under the Federal Arbitration Act ("FAA") and controlling law, this Court should stay the claims asserted against Stake.us and

---

[1] For avoidance of doubt, Stake.us does not intend to waive any arguments or objections related to personal jurisdiction; rather, it expressly contests personal jurisdiction in Stake.us's Motion to Dismiss, filed concurrently herewith.

[2] During the period at issue, Stake.us also periodically updated its Terms and displayed mandatory acceptance windows requiring users to scroll through the updated Terms and affirmatively accept them before using the Platform.

compel Plaintiffs to resolve them in arbitration. *See* 9 U.S.C. §§ 2–4; *Hall v. Sweepsteakes Ltd.*, No. 3:25-cv-345-RAH, 2026 WL 701560, at *6 (M.D. Ala. Mar. 12, 2026) (granting Stake.us's motion to compel arbitration under the same Terms and staying case pending arbitration); *M.M. v. Sweepsteakes Ltd.*, No. CV 25-11481-RGS, 2025 WL 3240413, at *1 (D. Mass. Nov. 20, 2025) (enforcing Stake.us Terms and Conditions and sending issue of arbitrability to arbitrator).

For all these reasons and those set forth below, the Court should grant this Motion and compel Plaintiffs to arbitrate the claims asserted against Stake.us in the FAC.

## II.   FACTUAL BACKGROUND

### A.   Stake.us's Services

Stake.us is an online social gaming platform that provides casino-style games via an interactive virtual platform (the "Platform"). Declaration of Jarrod Anthony Febbraio ("Decl.") ¶ 4.  Individuals who wish to use the Platform—including to play games, make purchases, and redeem prizes—must first create a user account. *Id*. ¶ 8.

### B.   Stake.us Users Are Bound By The Terms

#### 1.   Users Must Agree to Stake.us's Terms to Access the Platform

To create a Stake.us account, users must provide certain identifying information, including their email address and date of birth, and create a username and password. *Id.* ¶¶ 9-10.  From July 2022 until May 2023, after users provide this information, the Platform's registration screen conspicuously informed users that by clicking the "Play Now" button, they indicated that they had read and acknowledged the Terms, which was displayed in bold and hyperlinked to the then-operative Terms. *Id*. ¶ 9.



From May 2023 to the present, Stake.us presents users with the Terms in a scroll window directly on the registration screen. *Id*. at ¶ 10. Before a user can complete the registration process, the Platform requires the user to (a) scroll through the Terms in their entirety and (b) check a box next to the statement: "I have read and agree to the Terms and Conditions." *Id*. Only after the user both scrolls to the end of the Terms and checks the box can the user click the "Create an Account" button. *Id*. If a user attempts to click "Create an Account" before completing these steps, the Platform displays the following statement in red text: "Please read the terms and conditions in full and scroll to the end to accept." *Id*.

3



When Plaintiffs created their accounts, they encountered the screens and disclosures set forth above and agreed to the Terms. *Id.* ¶¶ 12, 18. For example, according to Stake.us's records, Plaintiff Tiffany Hines created her account on August 15, 2025, meaning she must have scrolled through the entirety of the Terms and checked a box indicating her assent. *Id.* ¶¶ 6, 12. [3] Although Stake.us has no records of any accounts associated with Plaintiffs other than Tiffany Hines, unless Plaintiffs falsely alleged that they "sign[ed] up" for accounts, FAC ¶ 25, Plaintiffs could only have created accounts through the processes described above to access the Platform. Decl. ¶ 18. [4] Taking

---

[3] When a user accepts the Terms, the time stamp of that acceptance is automatically recorded in Stake.us's back-end servers. Decl. ¶ 13. For example, Stake.us's internal account records confirm the date that Plaintiff Tiffany Hines created her account. *Id.*

[4] After undertaking various searches for accounts corresponding to each of the named Plaintiffs failed to turn up accounts associated with certain of the named Plaintiffs, *id.* ¶ 5, undersigned counsel requested that Plaintiffs provide the usernames and email addresses associated with the accounts that allegedly "signed up" for Stake.us. Plaintiffs declined to do so. But having affirmatively alleged that each Plaintiff "signed up" for Stake.us accounts to facilitate their alleged use of the Platform, Plaintiffs cannot avoid contractual obligations to arbitrate their disputes with Stake.us by obfuscating the relevant account information. To the extent Plaintiffs misrepresented

Plaintiffs' allegations as true, they also agreed to and are bound by the Terms.

## 2.    <u>**Stake.us Users Are Periodically Required to Accept Updated Terms**</u>

Stake.us periodically updates its Terms. Decl. ¶ 14. Beginning on May 15, 2023, the Platform displayed a mandatory acceptance window to all users who had not yet accepted an updated version of the Terms. *Id.* This window displayed the updated version of the Terms in full and required the user to scroll through them in their entirety before clicking a checkbox indicating agreement to the updated Terms. *Id.* In August of 2025, the Platform again displayed a mandatory acceptance window to all users who had not accepted the then-current version of the Terms. *Id.* ¶ 15.



---

that they "signed up" for Stake.us accounts, Stake.us reserves all rights, including sanctions under Federal Rule of Civil Procedure 11.

By way of example, following these notices, the account for Plaintiff Tiffany Hines continued to be accessed and actively used. *Id.* ¶ 6. To the extent the other named Plaintiffs also continued to use the Platform following these notices, Plaintiffs' continued use of the Platform after each mandatory acceptance window constitutes additional, independent assent to the Terms, including the arbitration provisions contained therein.

**C.      The Terms Contain A Binding Arbitration Agreement**

The Terms provide that, by creating an account, users "accept these Terms and Conditions" and "enter into a binding agreement with us which applies to your access to, and use of, our Platform and our Games." Decl., Ex. O § 1.[5] The Terms further state that "[b]y checking the box for acceptance during the registration process, accessing or using our Platform, creating a Customer Account, and/or accessing the Games, you confirm that you have read and agree to be bound by these Terms." *Id*.

The Terms' arbitration provisions include the following elements:

**Notice**: The Terms conspicuously inform users of the arbitration provision at the outset. Before the Terms even begin, an "IMPORTANT NOTICE" in capitalized font alerts users that "THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN CLAUSE 26." *Id*. at 1.

Section 2.6 reinforces this warning, again in all-capital letters, stating:

> "PLEASE BE AWARE THAT THESE TERMS INCLUDE DISPUTE RESOLUTION PROVISIONS, INCLUDING A PROVISION WAIVING YOUR RIGHT TO PURSUE ANY CLASS, GROUP OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT

---

[5] Citations to the Terms in this Motion refer to Version 15 unless otherwise specified, but Stake.us's Terms have always contained materially identical arbitration provisions for purposes of this Motion. *See* Decl., Exs. A-OP.

> WITHIN THE SPECIFIED TIME FRAME PURSUANT TO CLAUSE 26."

*Id*. at § 2.6 (emphasis in original).

**Expansive Scope**: The Arbitration Agreement applies broadly to "any and all past, present and future disputes, claims or causes of action between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, which arise out of or are related in any way to these Terms, the formation of these Terms, the validity or scope of this clause 26 . . . , your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake." *Id*. § 26.3. Under the Terms, "Participate," "Participating," or "Participation" is defined to mean "playing any Games or using our Platform in any manner whatsoever." *Id*. § 3(g) (emphasis omitted).

**Delegation Provision**: The Arbitration Agreement delegates exclusive authority to the arbitrator:

> "[B]oth you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and/or this clause 26 . . . as well as the decision of whether the Dispute should be arbitrated in the first place, shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA)."

*Id*. at § 26.6(a) (emphasis omitted).

**Individual Arbitration**: The Terms require that all arbitration proceedings "proceed in an individual capacity only," and provide that "neither you nor Stake may bring a Dispute as a Collective Action." *Id*. § 26.7(a). The Terms define "Collective Action" broadly to encompass "any claim, action, or proceeding asserted or pursued as a class action, group action, collective action, joint action, coordinated action, consolidated action, mass action, or in any other

7

representative or private attorney general capacity, whether in arbitration, court or any other venue." *Id*. § 3(a).

**Right to Opt Out**: The Arbitration Agreement also provides that users have the right to opt out of the Arbitration Agreement within 30 days of acceptance. Decl., Ex. O at § 26. Stake.us has no record showing that any of the Plaintiffs opted out through the procedures set forth in the Terms. Decl. ¶ 17.

## III. ARGUMENT

### A. The Arbitration Agreement Is Enforceable Against Plaintiffs

The FAA controls the disposition of this motion. The Terms make clear that they are governed by the FAA, Decl., Ex. O at § 26.2, which reflects federal policy that "courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). It "leaves no place for the exercise of discretion." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Instead, "courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id*. The court's role is limited to determining whether "a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983).

In deciding whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). When doing so, "due regard must be given to the federal policy favoring arbitration." *Volt*

*Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

Plaintiffs agreed to the Terms through straightforward methods of notice and assent, which bound them to the Terms' arbitration provisions.  Online agreements are enforceable where the user "(1) had 'reasonable notice of an offer' to enter into the contract and (2) 'manifested' assent to it."  *Naimoli v. Pro-Football, Inc*., 120 F.4th 380, 389 (4th Cir. 2024) (citation omitted).  "Offers and terms that are made reasonably conspicuous generally will satisfy this standard."  *Kiser v. Truist Fin. Corp*., 796 F. Supp. 3d 207, 225 (E.D. Va. 2025) (standard satisfied where "a cursory scan of the first page" revealed arbitration agreement); *Hall v. State Emps. Credit Union of Md*., No. MJM-23-2885, 2025 WL 903850, at \*4-5 (D. Md. Mar. 25, 2025) (finding an agreement that "prominently indicates on its first page, in bolded all-capital letters, that it includes an arbitration agreement" gave the plaintiff "reasonable notice of the arbitration agreement").

Because the Terms must be agreed to before a user may create an account and access the Stake.us Platform, and because Plaintiffs allege that they are Stake.us users, Plaintiffs are bound by the Terms.  *See* FAC ¶ 24.  From July 2022 until May 2023, Plaintiffs were automatically provided with "a clear and conspicuous notice that a click . . .  will be taken as assent" to the Terms via the disclosure and hyperlink located directly above the "Play Now" button.  *See* Decl. ¶ 9; *Dhruva v. CuriosityStream, Inc*., 131 F.4th 146, 155 (4th Cir. 2025) (holding that the plaintiffs' "clicks of the 'Sign up now' button objectively and unambiguously manifested assent" where the site "expressly advised [plaintiffs] that 'registering with the sites signifies that [they] agree to the[ ] terms of use'").  Where, as here, "the user must affirmatively manifest assent to agreements that are provided via hyperlink," such agreements are "routinely found to be valid, enforceable contracts."  *Hosseini v. Upstart Network, Inc*., No. 19-CV-704, 2020 WL 573126, at \*4 (E.D. Va. Feb. 5, 2020) (collecting cases).  Accordingly, Plaintiffs who created accounts between these dates

9

are bound by the Terms.

And from May 2023 to the present, the Terms constitute, at the very least, a binding "clickwrap" agreement, whereby a website presents "users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 207-08 (4th Cir. 2025) (characterizing these agreements as "provid[ing] certainty that the terms have been read . . .  and that the user has indicated their assent"). Courts routinely enforce clickwrap agreements, including agreements to arbitrate claims on an individual basis. *See Montoya v. King.com Ltd.*, No. 3:23CV3142, 2024 WL 1680028, at *5 (E.D. Va. Apr. 18, 2024) (collecting cases). In fact, the Terms "go one step further" than clickwrap agreements by requiring users "to scroll through the terms before checking a box . . . to indicate their assent," thus constituting a "scrollwrap agreement," which "are consistently found to be enforceable." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 470 (2021); *see also Hall*, 2026 WL 701560, at *1 (describing Stake.us's sign-up process as a "scrollwrap format" and enforcing the Terms).

Plaintiffs could not have avoided awareness of the arbitration provisions that the Terms disclosed so conspicuously—particularly where Plaintiffs were required to scroll through the Terms in their entirety to create a Stake.us account and/or continuing to use the Stake.us platform. *See supra* §§ II.B-C. For this reason, courts routinely enforce agreements such as the Terms where, as here, users must take an affirmative action—here, clicking to accept—after having notice of and an opportunity to review them. *See, e.g.*, *Montoya*, 2024 WL 1680028, at *6 (enforcing arbitration agreements presented through both an in-app dialogue box requiring users to click a green "Accept" button and a signup requiring users to check a box acknowledging "I have read and agree to the Terms of Use"); *Am. Eagle Motors, LLC v. Copart of Conn., Inc.*, No. 1:22-CV-

656(RDA/JFA), 2023 WL 123503, at *3 (E.D. Va. Jan. 5, 2023) (same where the plaintiff "check[ed] a box acknowledging that it had read and accepted the Member Terms and Conditions before creating his account"); *Hosseini*, 2020 WL 573126, at *2 (same where the plaintiff "checked the box and clicked the 'Agree' button" to accept arbitration agreement).

One way or the other, as a technical and legal prerequisite to creating an account and making use of the Platform in the manner alleged by the FAC, each of the Plaintiffs accepted the Terms, including the mandatory arbitration agreement embedded therein. *See supra* § II.B.  No more is required for the Court to compel arbitration of Plaintiffs' claims against Stake.us. *See M.M.*, 2025 WL 3240413, at *1; *Hall*, 2026 WL 701560, at *1.

### B.        The Arbitration Agreement Encompasses Plaintiff's Claims

#### 1.        The Arbitration Agreement Delegates Threshold Issues of Arbitrability to an Arbitrator

Notwithstanding that the technical architecture of the Platform requires users to agree to the Terms in conjunction with creating and making use of accounts on Stake.us, the Court need not—and should not—decide whether Plaintiffs' claims against Stake.us are arbitrable because the parties clearly and unmistakably delegated that determination to the arbitrator. The arbitration provisions in the Terms specify that an arbitrator, not a court, shall decide "any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and/or [the arbitration clause] . . .  as well as the decision of whether the Dispute should be arbitrated in the first place."  Decl., Ex. O § 26.6(a) (emphasis omitted). Courts routinely enforce that type of provision—indeed, the Supreme Court has held that parties may agree to delegate "gateway" questions of arbitrability to the arbitrator, including whether their agreement applies to the dispute at hand.  *Henry Schein, Inc.*, 586 U.S. at 68; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010).  Where, as here, the delegation clause is clear and

11

unmistakable, the Court's role is limited: it must enforce the delegation provision and send all threshold disputes to the arbitrator unless a party mounts a specific and credible challenge to the delegation clause itself. *Rent-A-Center*, 561 U.S. at 72. No such challenge is possible here.

The Terms also incorporate the American Arbitration Association rules, which similarly dictate that the arbitrator "rule[s] on his or her own jurisdiction," including disputes over an agreement's "existence, scope, or validity . . . or to the arbitrability of any claim or counterclaim." *See* Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures R-7(a) (2022); Terms § 26.6(a). That alone would compel arbitration of those issues. *See Brenco Enters., Inc. v. Bitesquad.com, LLC*, 297 F. Supp. 3d 608, 612 (E.D. Va. 2018) (characterizing the incorporation of the AAA rules as "clear and unmistakable" evidence of delegation and holding that "there is no doubt that the Agreement's arbitration clause manifests the parties' clear intention to commit the arbitrability determination to the arbitrator.").

Plaintiffs do not—and cannot—meaningfully challenge the delegation clause itself, as distinct from the arbitration agreement as a whole. Any challenge to the enforceability of the Terms generally, or to the arbitration agreement broadly, must therefore be resolved by the arbitrator. *See Rent-A-Center*, 561 U.S. at 72 (courts decide enforceability of delegation clause only if the plaintiff challenges that specific provision). Underscoring the point, a court recently enforced the very Terms at issue by sending the question of arbitrability to the arbitrator under analogous circumstances. *See M.M*, 2025 WL 3240413, at *1.

### 2. Plaintiffs' Illegality and Public Policy Arguments Are Delegated and Fail on the Merits

Plaintiffs contend that the Terms are unenforceable because they allegedly constitute a contract for an illegal purpose—namely, illegal gambling—and because they waive Plaintiffs' rights to bring RICO claims in a class action. *See* FAC ¶¶ 84, 175-77. But those arguments are

delegated to the arbitrator and, in any event, fail on the merits.

### a.    Plaintiffs' Enforceability Arguments Are Delegated

Plaintiffs' illegality and public policy arguments are threshold issues of arbitrability that the Terms delegate to the arbitrator.  The Supreme Court squarely addressed this issue in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), holding that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449.  Illegality is a matter of enforceability—not formation—and is therefore an issue for the arbitrator to decide.  *See id.*; *Boyle v. Sweepsteaks Ltd.*, No. 25-cv-00302, 2025 WL 1674480, at *6  (C.D. Cal. May 19, 2025) (delegating illegality defense to Stake.us's Terms to arbitrator).

Moreover, Plaintiffs' illegality and public policy arguments target the Terms as a whole— they do not and cannot single out the delegation clause for attack.  Where a delegation clause exists, a court may address enforceability only if the plaintiff specifically challenges the delegation provision—not the broader contract.  *Rent-A-Center,* 561 U.S. at 72; *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 636 (4th Cir. 2002) (rejecting arguments challenging an agreement as void *ab initio*, holding that because the challenges were not directed at the arbitration provision itself, they were delegated to the arbitrator); *Reel v. Anderson Fin. Servs., LLC*, No. 5:07CV00080, 2008 WL 53222, at *3 (W.D. Va. Jan. 2, 2008) ("claims attacking the validity of the agreement on the grounds that it is void *ab initio* under applicable state law are [delegated by] a broad arbitration provision").

Here, Plaintiffs expressly argue that Stake.us's "Terms and Conditions" as a whole "are not enforceable."  FAC ¶¶ 175-76. Plaintiffs make no effort to challenge the arbitration provisions in the Terms as unenforceable—let alone the delegation clause within those provisions.  Those arguments must be raised before the arbitrator, not this Court.

13

### b.   Plaintiffs' Enforceability Arguments Fail

Even if the Court does consider Plaintiffs' arguments, those arguments fail.  Plaintiffs suggest that the Terms are unenforceable because they purport to waive the right to bring class-based RICO claims, which Plaintiffs characterize as "statutory and unwaivable."  *Id.* ¶¶ 28, 149.  But courts have consistently held that civil RICO claims are arbitrable.  The Supreme Court definitively resolved this question nearly four decades ago in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 242 (1987), finding "no basis for concluding that Congress intended to prevent enforcement of agreements to arbitrate RICO claims" and that plaintiffs "may effectively vindicate their RICO claim in an arbitral forum."  Fourth Circuit precedent is in accord.  *See, e.g., Fisher v. Prudential-Bache Sec., Inc.*, 831 F.2d 290 (4th Cir. 1987) (applying *McMahon* and compelling arbitration of RICO claim); *Jeske v. Brooks*, 875 F.2d 71, 74 (4th Cir. 1989) (stating that "[c]learly, claims under RICO . . .  are arbitrable" and compelling arbitration).  Plaintiffs' assertion that RICO claims cannot be subject to arbitration is thus squarely foreclosed by binding authority.  The Terms' arbitration agreement is enforceable as to all of Plaintiffs' claims, including their RICO claims.

Moreover, Plaintiffs' illegality and public policy arguments are foreclosed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").  The Convention "applies to agreements that fall under § 2 of the FAA in which at least one party is foreign to the United States."  *Innospec Ltd. v. Ethyl Corp.*, No. 3:14-CV-158-JAG, 2014 WL 5460413, at *3 (E.D. Va. Oct. 27, 2014) (citing 9 U.S.C. § 202).  Because Stake.us is incorporated and registered in Cyprus, *see* FAC ¶ 30, a signatory to the Convention,[6] the agreement arises out of a commercial relationship with a reasonable relation to a foreign state and is subject to the

---

[6] N.Y. Convention, Contracting States, https://www.newyorkconvention.org/contracting-states.

Convention.

Plaintiffs' arguments are not cognizable under the Convention. The Convention requires United States courts "at the request of one of the parties" to an arbitration agreement, to "refer the parties to arbitration" unless the agreement "is null and void, inoperative or incapable of being performed." Convention art. II(3), 21 U.S.T. 2517 (Dec. 29, 1970).[7] The "null and void" defense only applies in "limited situations" that "can be applied neutrally on an international scale." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 372 (4th Cir. 2012) (citations omitted). Under these principles, courts have refused to address public policy arguments against arbitration agreements at "the arbitration-enforcement stage," holding that plaintiffs cannot interpose those defenses until "the award-enforcement stage" after arbitration has concluded. *Id*. And even at that later stage, public policy arguments are "construed narrowly" and "rarely successful," and only apply "where enforcement would violate the forum state's most basic notions of morality and justice." *Rsch. & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*, 182 F. Supp. 3d 556, 565, 568 (E.D. Va. 2016) (citations omitted).

Here, there is no basis for Plaintiffs to establish fraud, mistake, duress, waiver, or any other internationally recognized contract defense. Further, any claim that the arbitration agreement is contrary to public policy or part of an illegal gambling contract is not a defense that could be applied neutrally on an international scale or that would violate basic notions of morality. Accordingly, Plaintiffs cannot avoid arbitration on these grounds.

### 3. The Claims Fall Within the Arbitration Agreement's Broad Scope

Even if this Court does address the threshold arbitrability issue of whether Plaintiffs' claims fall within the arbitration agreement's scope, Plaintiffs' claims clearly do. Courts "liberally . . .

---

[7] *Available at* https://www.newyorkconvention.org/english (last accessed May 6, 2026).

15

construe the scope of arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) and should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Arbitration agreements that encompass all "claims arising out of or relating to" a matter are "broad." *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001). And courts consistently hold that such clauses encompass contract, statutory, and tort claims arising from a contractual relationship. *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir.1988) (interpreting arbitration clause covering all disputes "arising in connection" with the agreement).

The arbitration agreement here encompasses "any and all past, present and future disputes, claims or causes of action" between Plaintiffs and Stake that "arise out of or are related in any way to" the Terms, "the formation of these Terms, the validity or scope of this clause 26 . . . , your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake." Decl., Ex. O § 26.3. Plaintiffs' claims arise under or relate to the Platform, because the Terms define "Participate," "Participating," or "Participation" to mean "playing any Games or using our Platform in any manner whatsoever." *Id*. § 3(g) (emphasis omitted). These are precisely the activities the FAC alleges Plaintiffs engaged in. *See, e.g.*, FAC ¶¶ 24, 39, 88 (allegations regarding Plaintiffs' creation of accounts, purchase of Gold Coins, and participation in games on the Platform).

### C.     The Court Should Stay This Action and Compel Arbitration

Because each claim in the FAC is subject to arbitration, the Court should stay this proceeding as to all claims against Stake.us and Kick. When a court determines that all claims raised in an action are subject to arbitration, the FAA "requires a court to stay the proceeding"

16

pending the outcome of the arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Because Plaintiff's claims against Stake.us are all subject to arbitration, the Court should stay this action upon referring the dispute to arbitration as required by the FAA. *See* 9 U.S.C. § 3.

## IV.    CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs to arbitrate their claims against Stake.us and stay this action.

Dated: May 6, 2026

Respectfully submitted,

By: */s/ Hillary Dang*
Hillary Dang (VSB No. 92188)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

David McGill*
Diana Szego Fassbender*
ORRICK, HERRINGTON & SUTCLIFFE LLP 2100
Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
dmcgill@orrick.com
dszego@orrick.com

Paige Pavone*
Marc R.  Shapiro*
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
ppavone@orrick.com
mrshapiro@orrick.com

*Pro Hac Vice forthcoming*

*Attorneys for Defendant Sweepsteaks Ltd. d/b/a
Stake.us*

18

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026, I electronically filed the foregoing Motion to Compel

Arbitration and Stay Proceedings on behalf of Defendant Stake.us with the Clerk of the Court for

the United States District Court for the District of Eastern Virginia using the CM/ECF system.

*/s/ Hillary Dang*

Hillary Dang