# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| LaShawnna Ridley, Regina Ridley, Tiffany Hines, Stephine Hines, Preddy Ray, Dekeya Adams, Ricola Lawshea, and Latosha Sanderlin (STAKE.US USERS WITHIN THE UNITED STATES), Individually and on behalf of all others similarly situated, <br><br>      Plaintiffs, <br><br>   v. <br><br> SWEEPSTEAKS LTD. d/b/a STAKE.US, KICK STREAMING PTY LTD., AUBREY DRAKE GRAHAM p/k/a DRAKE, ADIN ROSS, AND GEORGE NGUYEN, <br><br>      Defendants. | Case No. 1:25-cv-2511-LMB-WEF |

**DEFENDANT SWEEPSTEAKS LTD. d/b/a STAKE.US'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 2

      A.    Stake.us ................................................................................................... 2

      B.    Plaintiffs and Their Claims .................................................................... 3

III.    LEGAL STANDARD .......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 6

      A.    This Court Cannot Exercise Personal Jurisdiction Over Stake.us. ........................ 6

            1.    Stake.us Is Not Subject to General Personal Jurisdiction in Virginia. ........................ 6

            2.    Specific Personal Jurisdiction Does Not Exist Over Stake.us. .................. 7

      B.    Plaintiffs Lack Standing to Assert Claims Against Stake.us. .............................. 12

      C.    Plaintiffs Fail to State Any Claim for Relief. ........................................................ 14

            1.    Plaintiffs Lack Standing and Fail to Adequately Assert RICO Claims Pursuant to 18 U.S.C. § 1962. ........................ 14

            2.    Plaintiffs Lack Standing to Assert RICO Claims Absent Any Injury to "Business or Property." .................. 15

            3.    Plaintiffs' RICO Allegations Fail to Satisfy Rule 9(b). ........................ 16

            4.    Plaintiffs Fail to State a VCPA Claim Against Stake.us. ........................ 20

            5.    Plaintiffs Have Not Alleged a "Loss" Under the VCPA. ........................ 24

            6.    Plaintiffs' Claim for Injunctive Relief Under the VCPA Fails. ................ 25

      D.    Plaintiffs Are Not Entitled to a Declaratory Judgment. ........................................ 25

V.    CONCLUSION ................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Allergan USA, Inc.*,
    No. 1:12-CV-115 GBL/TRJ, 2012 WL 3692396 (E.D. Va. Aug. 23, 2012)...........................18

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ...................................................................................9, 10

*Andrews v. Shandong Linglong Tyre Co., Ltd.*,
    656 F. Supp. 3d 583 (E.D. Va. 2023) ..........................................................................7

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
    806 F. Supp. 3d 1015 (N.D. Cal. 2025) ......................................................................16

*Argonaut Great Cent. Ins. Co. v. McDowell Cnty.*,
    626 F. Supp. 2d 554 (W.D.N.C. 2009) .......................................................................25

*Asahi Metal Industry Co. v. Superior Court*,
    480 U.S. 102 (1987).................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................6

*Borg v. Warren*,
    545 F. Supp. 3d 291 (E.D. Va. 2021) ........................................................................15

*Bowen v. adidas Am., Inc.*,
    416 F. Supp. 3d 574 (D.S.C. 2019)........................................................................17, 18

*Brenco Enters., Inc. v. Bitesquad.com, LLC*,
    297 F. Supp. 3d 608 (E.D. Va. 2018) ........................................................................25

*Brill v. Postle*,
    No. 2:19-CV-02027 WBS AC, 2020 WL 2936688 (E.D. Cal. June 3, 2020).........................16

*Brown v. Smith*,
    787 F. Supp. 3d 198 (E.D. Va. 2024) .........................................................................6

*Burger King Corp. v. Lee*,
    No. 06-20645-CIV, 2006 WL 8433548 (S.D. Fla. Aug. 11, 2006) ........................................14

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) ......................................................................................7

*Centennial Life Ins. Co. v. Poston*,
88 F.3d 255 (4th Cir. 1996) ......................................................................................25

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) ..................................................................................15

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
561 F.3d 273 (4th Cir. 2009) .................................................................................5, 11

*Cooper v. GGGR Investments, LLC*,
334 B.R. 179 (E.D. Va. 2005)....................................................................................24

*Curtis v. Propel Prop. Tax Funding, LLC*,
No. 3:16-CV-00731-JAG, 2018 WL 717006 (E.D. Va. Feb. 5, 2018)..............20, 26

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................................................................................................6

*Doe v. Burkman*,
No. 1:24-CV-00181 (RDA/WBP), 2025 WL 819115 (E.D. Va. Mar. 13, 2025)....................19

*Dunn v. Chaposky*,
No. 4:22-CV-00387-JD, 2022 WL 18495838 (D.S.C. Aug. 9, 2022) .....................18

*Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*,
No. 3:12CV146HEH, 2012 WL 1415632 (E.D. Va. Apr. 23, 2012)................12, 13

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166 (4th Cir. 2002) ....................................................................................18

*Farooq v. AmeriGas Propane, Inc.*,
No. 1:13CV711 LMB/IDD, 2013 WL 3894165 (E.D. Va. July 25, 2013).............24

*GE Inv. Priv. Placement Partners II v. Parker*,
247 F.3d 543 (4th Cir. 2001) ....................................................................................15

*Gentry v. Hyundai Motor Am., Inc.*,
No. 3:13-CV-00030, 2017 WL 354251 (W.D. Va. Jan. 23, 2017), *aff'd in
part, dismissed in part sub nom. Adbul-Mumit v. Alexandria Hyundai, LLC*,
896 F.3d 278 (4th Cir. 2018) ....................................................................................22

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
No. 1:21-CV-269 (MSN/JFA), 2022 WL 10197651 (E.D. Va. Oct. 17, 2022).......24

*Glazer v. Meta Platforms, Inc.*,
No. CV GLR-25-1560, 2025 WL 2958810 (D. Md. Oct. 17, 2025) ......................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ...........................................................................................................6

*Grizzard v. LG Chem Ltd.*,
641 F. Supp. 3d 282 (E.D. Va. 2022) ...................................................................................12

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) .....................................................................................................15, 17

*Harris v. Navy Fed. Credit Union*,
No. 1:23-CV-00676, 2023 WL 5321083 (E.D. Va. July 24, 2023) ......................................20

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
935 F.3d 211 (4th Cir. 2019) ...............................................................................................8

*Hitachi Credit Am. Corp. v. Signet Bank*,
166 F.3d 614 (4th Cir. 1999) ..............................................................................................13

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) ...............................................................................................5

*Howes v. Fin. Indus. Regul. Auth., Inc.*,
395 F. Supp. 3d 608 (D. Md. 2019) .....................................................................................25

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945) .........................................................................................................5, 7

*Jones v. Shooshan*,
855 F. Supp. 2d 594 (E.D. Va. 2012) ...................................................................................23

*Keen v. Keen*,
No. 7:25-CV-00475, 2025 WL 2375210 (W.D. Va. Aug. 14, 2025),
*reconsideration denied,* No. 7:25-CV-00475, 2026 WL 510376 (W.D. Va.
Feb. 24, 2026) ..................................................................................................................20

*Khashoggi v. NSO Group Techs. Ltd.*,
700 F. Supp. 3d 384 (E.D. Va. 2023), *aff'd*, 138 F.4th 152 (4th Cir. 2025)............9, 10, 11, 12

*Khashoggi v. NSO Grp. Techs. Ltd.*,
138 F.4th 152 (4th Cir. 2025) ...................................................................................7, 8, 9, 10

*Knapp v. Zoetis Inc.*,
No. 3:20CV191, 2021 WL 1225970 (E.D. Va. Mar. 31, 2021) ............................................14

iv

*Lambert v. Navy Fed. Credit Union*,
   No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) ..........................13

*Langley v. Booz Allen Hamilton Holding Corp.*,
   No. 117CV696LMBTCB, 2018 WL 2108291 (E.D. Va. Feb. 8, 2018) ................................22

*Lewis v. Willough at Naples*,
   311 F. Supp. 3d 731 (D. Md. 2018) ..................................................................................12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................................................5

*McFarland v. Virginia Ret. Servs. of Chesterfield, L.L.C.*,
   477 F. Supp. 2d 727 (E.D. Va. 2007) ...............................................................................13

*Morales v. SportsEngine, Inc.*,
   No. 24-CV-2971 (JGLC), 2025 WL 2662134 (S.D.N.Y. Sept. 17, 2025) ..............................13

*Nahigian v. Juno Loudoun, LLC*,
   684 F. Supp. 2d 731 (E.D. Va. 2010) ...............................................................................20

*Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*,
   No. 19-CV-461, 2020 WL 1644566 (E.D. Va. Apr. 2, 2020) ...........................................15, 17

*Nunes v. Fusion GPS*,
   531 F. Supp. 3d 993 (E.D. Va. 2021) ..............................................................................15, 17

*Owens v. DRS Auto. Fantomworks, Inc.*,
   764 S.E.2d 256 (Va. 2014).................................................................................................20

*Patterson v. Mobil Oil Corp.*,
   335 F.3d 476 (5th Cir. 2003) ............................................................................................15

*Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*,
   892 F.2d 355 (4th Cir. 1989) ............................................................................................13

*Physicians Commi. for Responsible Medicine v. Gen. Mills, Inc.*,
   283 F. App'x. 139 (4th Cir. 2008) .....................................................................................25

*Pop v. Lulifama.com LLC*,
   145 F.4th 1285 (11th Cir. 2025) .......................................................................................23

*Project Honey Pot v. John Does*,
   No. 1:11CV15 LMB/JFA, 2012 WL 1854184 (E.D. Va. May 21, 2012) ................................9

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024) ..............................................................................25

*Regions Bank v. J.R. Oil Co.*,
  387 F.3d 721 (8th Cir. 2004) ...........................................................................................15

*Reitz v. CVY of Alexandria, LLC*,
  No. 1:23-CV-959 (RDA/LRV), 2025 WL 895204 (E.D. Va. Mar. 24, 2025)...................20, 22

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)..........................................................................................................19

*Rojas v. Delta Airlines, Inc.*,
  425 F. Supp. 3d 524 (D. Md. 2019).....................................................................................22

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*,
  911 F.3d 192 (4th Cir. 2018) .....................................................................................6, 7, 8

*Socket Mobile, Inc. v. Cognex Corp.*,
  No. CV 17-156-VAC-MPT, 2017 WL 3575582 (D. Del. Aug. 18, 2017) ..............................13

*Tate v. Hain*,
  181 Va. 402 (1943) .............................................................................................................13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..............................................................................................................5

*UMG Recordings, Inc. v. Kurbanov*,
  963 F.3d 344 (4th Cir. 2020) .........................................................................................5, 10

*United States v. Griffin*,
  660 F.2d 996 (4th Cir. 1981) ..............................................................................................19

*United States v. Turkette*,
  452 U.S. 576 (1981)............................................................................................................19

*Vision Motor Cars, Inc. v. Valor Motor Co.*,
  981 F. Supp. 2d 464 (M.D.N.C. 2013) ..................................................................................5

*Walden v. Fiore*,
  571 U.S. 277 (2014)............................................................................................................12

*Walters v. McMahen*,
  795 F. Supp. 2d 350 (D. Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012) ...............................26

*Washington Square Sec., Inc. v. Aune*,
  385 F.3d 432 (4th Cir. 2004) ..............................................................................................26

*Williams v. Equity Holding Corp.*,
  498 F. Supp. 2d 831 (E.D. Va. 2007) ..................................................................................17

*Wynn's Extended Care, Inc. v. Bradley*,
   619 F. App'x 216 (4th Cir. 2015) ........................................................................20

*Zaklit v. Glob. Linguist Sols., LLC*,
   No. 1:14CV314 JCC/JFA, 2014 WL 3109804 (E.D. Va. July 8, 2014)..................14

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997)......................................................................10

**Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201................................................................4, 14, 25

Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §
   1962 *et seq.* ........................................................................................................ *passim*

Va. Code § 11-15 ......................................................................................................................25

Virginia Consumer Protection Act (VCPA), Va. Code § 59.1-196 *et seq.*............................ *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1)...............................................................................................................5

Fed. R. Civ. P.  12(b)(2)..............................................................................................................5

Fed. R. Civ. P.  12(b)(6)..........................................................................................................6, 12

## I.    INTRODUCTION

The conspiracy theory that Plaintiffs advance in the First Amended Complaint ("FAC") might play well in the dark corners of internet chat rooms, but it has no place in federal court. According to the FAC, Defendant Sweepsteaks Ltd. d/b/a Stake.us ("Stake.us")—an online social gaming platform—conspired with popular musical artist Drake and others to "create fraudulent streams of Drake's music" on music streaming platforms; "fabricate popularity; disparage competitors and music label executives; distort recommendation algorithms; and distribute financing for all of the foregoing, while concealing the flow of funds."  FAC, ECF No. 9 ¶ 11. "[T]he heart of the scheme" allegedly consists of "inauthentic streams" that "suppressed authentic artists and narrowed consumers' access to legitimate content by undermining the integrity of curated experiences." *Id.*  ¶ 12.  Curiously, however, the FAC does not seek to restore "the integrity of curated experiences"—whatever that might mean—or assert any claims on behalf of the competitors, music label executives, or artists allegedly harmed.  *Id.* ¶¶ 94, 127-35.  Instead, the FAC demands damages for Plaintiffs—a group of Stake.us users that supposedly would not have "spent money" on Stake.us had they known about this alleged "botting" scheme. *Id.* ¶¶ 11, 158.

Unlike nonparty Stake.com, an "international online casino" available outside the United States, Stake.us offers only social gaming and "does not offer real money gambling." *Id.* ¶¶ 2, 58. Plaintiffs nonetheless define both enterprises as "Stake,"[1] and then direct allegations on "information and belief" at "Stake" to accuse *Stake.us* of running an "illegal online gambling platform" that allegedly violates federal organized crime and state consumer protection laws. *See id.* at 1, ¶¶ 153, 154, 156.  But their gambit is doomed from inception, as the FAC fails to allege

---

[1] *See* FAC 2 n.1 (explaining that "Stake.com and Stake.us are referred to together herein, where applicable, as 'Stake'").

facts supporting (1) this Court's jurisdiction over Plaintiffs' claims; (2) Plaintiffs' own standing to bring those claims; or (3) any necessary element of Plaintiffs' claims.[2]

## II.    BACKGROUND

### A.  Stake.us

Defendant Sweepsteaks Ltd. d/b/a Stake.us ("Stake.us") owns and operates an online platform (the "Platform") that allows users to play casino-style games.  *See* FAC ¶ 48. Stake.us is a Cyprus Limited Company with its principal place of business in Cyprus. *Id.* ¶ 30. Stake.us does not have an office or a physical presence in the Commonwealth of Virginia. *See id.* ¶ 40.

The Platform does not require users to buy-in to play games.  Users may play online casino-style games on the Platform, such as slots, table games, scratch cards, and live dealer games using two kinds of *virtual* currency: "Gold Coins" and "Stake Cash." *Id.* ¶¶ 48, 51. Gold Coins are the primary currency for gameplay. *Id.* ¶ 52. Users may purchase or earn Gold Coins by winning games or through other promotions.  *See id.*  Gold Coins have no monetary value outside of the Platform and may only be used to play games on the Platform.  *See id.*  Stake Cash is the only other gameplay currency.  Users cannot purchase Stake Cash.  Rather, Stake Cash must be earned through promotional bonuses, either with Gold Coins, through alternate methods of entry such as postcards, or through other promotions. *See id.*

If a user plays a game with Stake Cash and wins, and subject to requirements such as playing at least three times, the user may redeem Stake Cash earnings for prizes with real-world value outside the Platform, such as cryptocurrency or digital gift cards.  *Id.*  In this way, Stake

---

[2] As stated in Stake.us's Motion to Compel Arbitration ("Arbitration Motion") filed concurrently herewith, Plaintiffs are required to arbitrate their claims against Stake.us in the first instance.  *See* Mem. in Supp. of Defs.' Mot. to Compel Arbitration, ECF No. 17.  However, Plaintiffs' claims should nevertheless be dismissed for the reasons stated herein.

Cash operates as a sweepstakes, providing users a chance to win prizes without having to make a purchase on the Platform.

When users sign up for an account on Stake.us, they are required to accept the Platform's Terms & Conditions (the "Terms"). *Id.* ¶ 23. The Terms include a mandatory arbitration clause and a class action waiver. *Id.*[3] The Terms also include a choice of law provision requiring the application of Delaware law to all disputes arising from use of the Platform. Jarrod Anthony Febbraio Decl. in Supp. of Defs.' Mot. to Compel Arbitration ("Febbraio Decl."), Ex. O at § 29, ECF No. 17-16.

Stake.us is separate and distinct from Stake.com. Unlike Stake.us, Stake.com is an international online casino owned by a nonparty and not available to users in the United States. *See* FAC ¶¶ 2, 46, 47.

### B. Plaintiffs and Their Claims

Plaintiffs LaShawnna Ridley and Tiffany Hines filed their original Class Action Complaint in this Court on December 31, 2025. Plaintiffs then filed their First Amended Complaint on February 24, 2026, adding six additional named Plaintiffs: Regina Ridley, Stephine Hines, Preddy Ray, Dekeya Adams, Ricola Lawshea, and Latosha Sanderlin, all of whom are allegedly "citizens of the Commonwealth of Virginia" that "signed up for Stake[.us] accounts" and "spent money on the [P]latform." FAC ¶¶ 14, 25, 91.

According to Plaintiffs, Stake.us, along with Defendants Kick Streaming Party Ltd. ("Kick"), Aubrey Drake Graham (popularly known as "Drake"), Adin Ross, and George Nguyen are all responsible for (1) misrepresenting Stake.us as a "lawful gambling experience," and (2) concealing that Plaintiffs' use of the Platform allegedly indirectly financed a "bot army" to

---

[3] The Terms are the subject of Stake.us's concurrently filed Arbitration Motion. *See* ECF No. 17.

artificially inflate Drake's popularity. *Id.* ¶¶ 14-15.  Plaintiffs allege that, through its website and Terms, Stake.us misrepresents "the legality of the [P]latform's operations" by holding Stake.us out to be a "Social Casino" offering a "safe and free gaming experience" that "use[s] tokens (Gold Coins and Stake Cash) . . . . rather than real money."  *Id.* ¶¶ 58-63.  But they do not allege when, where, or how any such misrepresentations came to their attention, much less that they relied on them *before* using Stake.us.  Instead, Plaintiffs allege they "signed up for Stake[.us] accounts in reliance on Drake's endorsement of Stake.us and after seeing his promotional content depicting Stake.us as a legitimate platform." *Id.* ¶¶ 14, 88.  Plaintiffs claim Ross promoted Stake.us's "illegal gambling operation" too, and in return, Drake and Ross received "gambling proceeds" that they then used to finance artificial streaming, or "botting," of Drake's music on other platforms, such as Spotify, to fabricate Drake's popularity.  *Id.*  ¶¶ 4, 7, 11-13, 44, 90-135.  However, nowhere do Plaintiffs allege that *Stake.us* deployed or engaged in "botting" or manipulated music streaming.

Plaintiffs claim if they had known that Stake.us was an illegal "gambling" platform that funded the allegedly fraudulent streaming of Drake's music elsewhere, they would not have signed up for and spent money on the Platform, and they seek to recover the money they spent and lost "chasing gambling wins."  *Id.*  ¶¶ 9, 24-25, 91, 94, 137, 158.  Plaintiffs allege that they signed up for Stake.us accounts, but purport to represent a putative nationwide class of "[a]ll persons in the United States who created an account on *or accessed* Stake.us and who purchased Gold Coins bundled with Stake Cash and made and lost one or more wagers using Stake Cash within the last three years." *Id.*  ¶¶ 136-37 (emphasis added).  "In the alternative," Plaintiffs purport to represent the same class of Virginians.  *Id.*  ¶ 138.  Plaintiffs assert four claims against all Defendants: (1) violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.  § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d); (3) violation of the Virginia Consumer

4

Protection Act (VCPA), Va. Code § 59.1-196 *et seq.*; and (4) a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, for a court order declaring "void and unenforceable" the mandatory arbitration and class action waiver provisions in Stake.us's Terms. *Id.* ¶¶ 148-183.

### III.    LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss, plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020). While construing all relevant pleading allegations in the light most favorable to the plaintiff and in favor of jurisdiction, courts may not simply accept as true bare legal conclusions unsupported by non-conclusory factual allegations. *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013).

A Virginia federal district court may exercise personal jurisdiction over a foreign corporation only if jurisdiction is authorized by Virginia's long-arm statute and consistent with the Due Process Clause. *See Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 277 (4th Cir. 2009). Virginia's long-arm statute is coextensive with the full reach of the Due Process Clause, so both inquiries merge into a single analysis, and requires a defendant have "minimum contacts" with the forum state "such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, (1945)).

Rule 12(b)(1) dismissal for lack of subject matter jurisdiction is appropriate where a plaintiff has failed to demonstrate Article III standing for each claim against each defendant for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). It is again plaintiff's burden to allege facts showing "an injury in fact that is concrete, particularized, and actual or imminent" and that was "likely caused by the defendant." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

5

Rule 12(b)(6) dismissal is warranted "if the 'plaintiff's allegations fail to state a claim upon which relief can be granted.'" *Brown v. Smith*, 787 F. Supp. 3d 198, 204 (E.D. Va. 2024) (Brinkema, J.) (citation omitted). "To survive a Rule 12(b)(6) motion, a complaint's factual allegations must be more than speculative" and "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.  This Court Cannot Exercise Personal Jurisdiction Over Stake.us.

The Court should dismiss Plaintiffs' claims against Stake.us for lack of personal jurisdiction. Personal jurisdiction may be either general or specific. *See Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018). None of these predicates exist here for Plaintiffs' claims against Stake.us.

#### 1.    Stake.us Is Not Subject to General Personal Jurisdiction in Virginia.

General personal jurisdiction exists only when a defendant's affiliations with the forum are "so 'continuous and systematic' as to render [it] essentially at home" there—a standard met, for a corporation, paradigmatically only where it is incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Here, Stake.us is not incorporated or headquartered in Virginia. Nor is Stake.us registered to do business in Virginia. Indeed, Plaintiffs acknowledge "Stake.us is a Cyprus Limited Company with its principal place of business located at . . . Limassol, [] Cyprus." FAC ¶¶ 30, 40. The FAC offers no allegations whatsoever of any "systematic and continuous contacts" between Stake.us and Virginia to support general jurisdiction.

6

### 2.   Specific Personal Jurisdiction Does Not Exist Over Stake.us.

The exercise of specific personal jurisdiction must be authorized by the forum state's long-arm statute and comport with the Due Process Clause of the Fourteenth Amendment. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003). In Virginia, the long-arm statute "extends personal jurisdiction to the outer bounds of the Fourteenth Amendment Due Process Clause," so the statutory and constitutional requirements "collapse[] into a single inquiry." *Andrews v. Shandong Linglong Tyre Co., Ltd.*, 656 F. Supp. 3d 583, 591 (E.D. Va. 2023) (*quoting Int'l Shoe Co.*, 326 U.S. at 316). Specific personal jurisdiction exists only where "the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts." *Sneha Media & Entm't, LLC*, 911 F.3d at 198. The Fourth Circuit applies a three-part test to determine whether the facts alleged warrant the exercise of specifical personal jurisdiction: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *See Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159 (4th Cir. 2025). Plaintiffs have not satisfied any factor.

### a.   Stake.us Did Not Purposefully Avail Itself of the Privilege of Conducting Activities in Virginia.

Stake.us cannot be "haled" into court in Virginia without having purposefully availed itself of conducting business there. Fourth Circuit courts consider a non-exhaustive list of factors to assess this threshold question, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in

7

significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Entm't, LLC*, 911 F.3d at 198-99.  Additionally, in-forum effects of out-of-forum conduct may establish  jurisdiction only where, "the charged conduct [is] 'expressly aimed' at the forum;" "[t]he effects of the act for which a plaintiff seeks relief . . . create[s] a connection to the forum itself, 'not just to parties who happen to live there';" and the connection is "substantial," or has more than "incidental effects" in the forum.  *Khashoggi*, 138 F.4th at 160  (quoting *Hawkins v. i-TV Digitalis Tavkozlesi zrt*., 935 F.3d 211, 230 (4th Cir. 2019)).

Here, the FAC fails to establish that Stake.us purposefully availed itself of conducting business in Virginia.  Stake.us does not have offices, employees, or agents in Virginia, or maintain property in Virginia.  Plaintiffs do not allege that Stake.us is contractually obligated to perform duties in Virginia, or that a Virginia choice-of-law provision governs the parties' relationship, either (nor can they, given that Stake.us's Terms provide that Delaware law controls the relationship between Stake.us and any user[4]).

Plaintiffs claim that Stake.us "intentionally conducts business in Virginia" through "its website and brand Stake.us, [and] corresponding advertisements and promotions, including targeted advertisements." *Id.* ¶ 40. Plaintiffs further allege that Defendants, including Stake.us "engaged in deceptive and misleading acts and practices in connection with consumer transactions affecting Virginia residents." *Id.* ¶ 165. But none of these allegations are supported with "sufficient, non-conclusory facts or plausible assertions" establishing Stake.us's connection to the

---

[4] *See infra* at 12-14.

8

forum. *Khashoggi v. NSO Group Techs. Ltd.*, 700 F. Supp. 3d 384, 397 (E.D. Va. 2023), *aff'd*, 138 F.4th 152 (4th Cir. 2025) (Brinkema, J.).

For example, in *Khashoggi*, this Court held that plaintiff's assertion that the out-of-forum defendant "intentionally target[ed] . . . her devices in Virginia" and "purposefully direct[ed] surveillance activities towards [plaintiff's] devices while she resided in Virginia" did not "plausibly allege any specific Virginia-related conduct" to support jurisdiction. *Id.* at 397-99. The plaintiff "never plead[ed] with specificity" that the alleged surveillance occurred in Virginia or how defendant "specifically participated in the surveillance of her phones while she was in Virginia." *Id.* Nor did plaintiff allege that defendant solicited business or had offices in Virginia. *Id.* at 397.

The same is true here. Nowhere have Plaintiffs alleged facts demonstrating that Stake.us purposefully directed any activity toward Virginia. Plaintiffs do not allege that Stake.us directed advertisements specifically at Virginia or targeted any deceptive or misleading acts at Virginia. They do not allege that they—or anyone—in Virginia accessed the Platform *in Virginia*.

Moreover, even if Plaintiffs accessed the Platform in Virginia, mere accessibility in Virginia—like any other website available for access throughout the United States—cannot be the sole basis for jurisdiction in this Virginia Court. *See Khashoggi*, 138 F.4th at 162; *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 714-15 (4th Cir. 2002) ("[a] person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received"); *see also Project Honey Pot v. John Does,* No. 1:11CV15 LMB/JFA, 2012 WL 1854184, at *7 (E.D. Va. May 21, 2012) (Brinkema, J.) ("exercising personal jurisdiction merely because . . . the banks are members of the global Visa system would essentially subject all acquiring banks to jurisdiction anywhere in the world").

9

Though Stake.us is a user-based gaming platform, "[w]hether [it is] highly interactive or semi-interactive . . . is not determinative for purposes of personal jurisdiction." *UMG Recordings*, 963 F.3d at 353.   Under the Fourth Circuit's "sliding-scale" framework adopted from *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), a defendant must "(1) direct[] electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates . . . a potential cause of action cognizable in the State's courts" for jurisdiction to exist.  *ALS Scan*, 293 F.3d at 714. Accordingly, "[r]egardless of where on the sliding scale a defendant's web-based activity may fall . . . the touchstone remains that an out-of-state person have engaged in some activity *purposefully directed* toward the forum state." *UMG Recordings*, 963 F.3d at 352-53 (emphasis added). Plaintiffs have not alleged any intentional electronic activity by Stake.us directed at Virginia to satisfy the purposeful availment requirement, precluding jurisdiction.

### b.  Plaintiffs' Claims Do Not Arise Out of Stake.us's Activities Directed at Virginia.

This Court may not exercise personal jurisdiction when Plaintiffs have also failed to adequately plead claims arising out of Stake.us's conduct "directed at and conducted in Virginia." *Khashoggi*, 138 F.4th at 158.  To satisfy this prong, defendant's "activity in the forum state" must be "the genesis of the dispute." *UMG Recordings*, 963 F.3d at 354 (internal citation and quotation omitted).  In *Khashoggi*, this Court found that plaintiff failed to adequately link defendant's misconduct to Virginia to satisfy this factor where plaintiff did not allege defendant's actions occurred in Virginia. *Khashoggi*, 700 F. Supp. 3d at 399-400.

Plaintiffs likewise fail to link any alleged conduct by Stake.us in Virginia to their claims. They assert VCPA and RICO violations that arise out of Stake.us's supposed misrepresentations regarding the Platform and the alleged financing of Drake's so-called artificial streaming

10

campaign.  FAC ¶¶ 1-9, 148-159, 165-69.  But nowhere do Plaintiffs allege that Stake.us conducted these activities specifically directed at or in Virginia.  Further, Plaintiffs do not allege how these actions resulted in Plaintiffs' injuries in Virginia; indeed, Plaintiffs do not allege that any Plaintiff actually signed up for or accessed Stake.us in Virginia, and Stake.us's own investigation could identify only one Plaintiff who registered for a Stake.us account.  *See* Febbraio Decl. ¶ 6-7, ECF No. 17-1. Accordingly, Plaintiffs fail to establish their claims arise out of Stake.us's conduct in Virginia to establish personal jurisdiction there.

### c.  Exercising Personal Jurisdiction Over Stake Would Not Be Constitutionally Reasonable.

Even if the FAC had not failed the first two prongs of the Fourth Circuit test, haling Stake.us into this Court would be constitutionally unreasonable Courts assess the reasonableness of the forum by weighing: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Khashoggi*, 700 F. Supp. 3d at 400 (Brinkema, J.) (quoting *Consulting Eng'rs Corp.*, 561 F.3d 273, 279 (4th Cir. 2009)).  Although the defendant bears the burden to present a "compelling case" that exercising jurisdiction would be constitutionally unreasonable, "[t]he more attenuated the contacts with the forum state, the less a defendant must show in terms of unreasonableness to defeat the court's exercise of jurisdiction." *Khashoggi*, 700 F. Supp. 3d at 400 (Brinkema, J.).

These factors weigh heavily against the exercise of personal jurisdiction over Stake.us here. The burden on Stake.us of litigating in Virginia is significant: (i) Stake.us is incorporated abroad; (ii) it owns no property in Virginia; and (iii) no Stake.us employees or agents work in Virginia. *Cf. id.* at 400-01. Nor does Stake.us have evidence or witnesses in Virginia.  Against this backdrop,

11

requiring Stake.us to litigate in Virginia would force it to bear a disproportionate burden relative to the minimal connections it maintains to this forum.  And "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1987).  Accordingly, particularly where Plaintiffs have not plausibly demonstrated that Stake.us directed any alleged conduct at Virginia, exercising personal jurisdiction over Stake.us in this case would offend constitutional due process. This case should be dismissed as a result.[5]

### B. Plaintiffs Lack Standing to Assert Claims Against Stake.us.

Jurisdictional infirmities aside, Plaintiffs also lack standing to bring Virginia law claims. When they "signed up" for Stake.us accounts, Plaintiffs necessarily agreed to Stake.us's Terms. *See* ECF No. 17.[6]  The Terms constitute enforceable contracts and, as relevant here, include a choice of law provision requiring application of ***Delaware*** law to any disputes arising from use of the Platform.  That provision bars Plaintiffs' Virginia claims.

---

[5] Moreover, Plaintiffs have not demonstrated that litigating this action in Virginia would be more convenient for Plaintiffs. Plaintiffs allege they are "citizens of the Commonwealth of Virginia," FAC ¶ 29, but they otherwise do not allege any other connection that they have to this forum. Even if they did, "plaintiff[s] cannot be the only link between the defendant and the forum." *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 736 (D. Md. 2018); *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (plaintiff's contacts with the forum do not satisfy "the defendant-focused 'minimum contacts' inquiry."). "'[D]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of the plaintiffs.'" *Khashoggi*, 700 F. Supp. 3d at 401 (quoting *Grizzard v. LG Chem Ltd.*, 641 F. Supp. 3d 282, 292 (E.D. Va. 2022)).

[6] In resolving motions made under Rule 12(b)(6), courts may consider "documents incorporated into the complaint by reference" or otherwise central to the claims. *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No. 3:12CV146HEH, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012).  Both exceptions apply here. *See, e.g.*, FAC ¶¶ 58, 63, 156, 171-83.

If this Court finds a sufficient basis to exercise personal jurisdiction over Stake.us, it must apply the choice-of-law principles of the forum state to those claims. *See McFarland v. Virginia Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 732 (E.D. Va. 2007).[7] Virginia law "looks favorably upon choice of law clauses in a contract," *Edwards*, 2012 WL 1415632, at *3, and "gives effect to parties' choice of law in a contract unless circumstances show a fraudulent purpose." *Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*, 892 F.2d 355, 357-58 (4th Cir. 1989) (citing *Tate v. Hain*, 181 Va. 402 (1943)). Here, Plaintiffs do not allege any fraudulent purpose behind the choice of law provision to negate its validity.

The Terms makes clear that Delaware law governs over any disputes arising from Plaintiffs' "use of the Platform" and, indeed, their "entire relationship" with Stake.us. Febbraio Decl., Ex. O § 29.1, ECF No. 17-16. Where parties agree to "broad" choice of law provisions that extend beyond breach of contract claims,[8] courts include consumer protection statutes and related claims within their ambit. *See, e.g., Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *6 (E.D. Va. Aug. 14, 2019) (finding choice of law provision "sufficiently broad to preclude" a claim under North Carolina consumer protection law); *Morales v. SportsEngine, Inc.*, No. 24-CV-2971 (JGLC), 2025 WL 2662134, at *3 (S.D.N.Y. Sept. 17, 2025) (dismissing California consumer protection claims where choice of law provision applied New York law). The same result should follow for Plaintiffs' VCPA and Virginia-law based RICO

---

[7] Even without the federal RICO claim, this Court, assuming it has jurisdiction, would be sitting in diversity over Plaintiffs' claims and would apply the choice-of-law rules of the state in which it sits, Virginia. *Edwards*, 2012 WL 1415632, at *3.

[8] *See, e.g.*, *Socket Mobile, Inc. v. Cognex Corp.*, No. CV 17-156-VAC-MPT, 2017 WL 3575582, at *6 (D. Del. Aug. 18, 2017) (characterizing a provision applying to the "validity, interpretation, construction, and performance of the Agreement" as "broad"); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (holding that courts should apply "sufficiently broad" choice of law provisions to extra-contractual claims).

claims against Stake.us.  *See Burger King Corp. v Lee*, No. 06-20645-CIV, 2006 WL 8433548, at *3 (S.D. Fla. Aug. 11, 2006) (explaining courts nationwide have "repeatedly determined that a contract's choice of law provision requires dismissal of claims under another state's law which relate to the contract") (collecting cases).  *Cf. Zaklit v. Glob. Linguist Sols., LLC*, No. 1:14CV314 JCC/JFA, 2014 WL 3109804, at *9 (E.D. Va. July 8, 2014) (applying Virginia choice-of-law provision to tort and statutory claims arising from parties' relationship).

Because the choice of law provision is valid, sufficiently broad, and requires Plaintiffs to submit to Delaware law, they lack standing to assert claims against Stake.us under Virginia law.[9] *See, e.g.*, *Knapp v. Zoetis Inc.*, No. 3:20CV191, 2021 WL 1225970, at *8 (E.D. Va. Mar. 31, 2021) (finding plaintiff "lack[ed] standing to bring any claims under New Jersey law" and dismissing New Jersey claims where Virginia choice-of-law principles mandated that Virginia law apply).  As such, the Court should dismiss Plaintiffs' VCPA and Virginia-based RICO claims against Stake.us.

### C.  Plaintiffs Fail to State Any Claim for Relief.

Even if Plaintiffs could assert claims arising under Virginia law in the face of a Delaware choice of law provision, they nonetheless fail to state a valid claim under the RICO statute, the VCPA, or Declaratory Judgment Act against Stake.us.  The Court should dismiss these claims.

### 1.  Plaintiffs Lack Standing and Fail to Adequately Assert RICO Claims Pursuant to 18 U.S.C. § 1962.

---

[9] Because Plaintiffs lack standing to bring claims under Virginia law, they "similarly lacks standing to bring claims on behalf of a class proceeding under [Virginia] law." *See Knapp v. Zoetis Inc.*, No. 3:20CV191, 2021 WL 1225970, at *11. (E.D. Va. Mar. 31, 2021). Accordingly, Plaintiffs do not have standing to bring claims on behalf of *any* class claiming VCPA violations or RICO violations premised on Virginia law, and those claims should be stricken as a result, in addition to the reasons set forth in Stake.us's and Kick's Motion to Strike, filed concurrently herewith. *See, e.g.*, *id.* (striking plaintiff's class allegations under New Jersey law because plaintiff lacked standing to bring her own claims under New Jersey law).

14

The RICO statute is intended "to combat organized crime," *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 245 (1989).  To state a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*, No. 19-CV-461 (LMB/TCB), 2020 WL 1644566, at *3 (E.D. Va. Apr. 2, 2020) (Brinkema, J.); *Borg v. Warren*, 545 F. Supp. 3d 291, 310 (E.D. Va. 2021) (citations omitted).  Such conduct must cause injury to plaintiff's business or property. *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1005 (E.D. Va. 2021).  "These elements are "demanding" because "Congress contemplated that only a party engaging in widespread fraud would be subject to RICO's serious consequences." *Navient Sols.*, 2020 WL 1644566, at *3.  A plaintiff must first adequately plead a substantive RICO violation before the plaintiff may proceed on a RICO conspiracy claim.  18 U.S.C. § 1962(d); *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001).

Plaintiffs lack standing to allege RICO violations and fail to adequately allege them in any event.  As a result, their RICO conspiracy charge under § 1962(d) also fails.

### 2. Plaintiffs Lack Standing to Assert RICO Claims Absent Any Injury to "Business or Property."

As a threshold matter, Plaintiffs' RICO claims must be dismissed because they do not allege any injury to "business or property," let alone caused by Stake.us's conduct, as required by 18 U.S.C. § 1964(c).  In order "[t]o demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002); *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728 (8th Cir. 2004) (same); *see also Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.16 (5th Cir. 2003) (A plaintiff lacks RICO standing "unless he can show concrete financial loss.").  As with Plaintiffs' VCPA damages, *see infra* at 24-25, the FAC alleges no concrete financial loss to satisfy the injury requirement here.

15

Moreover, Plaintiffs' gaming losses—which they characterize as "gambling" losses—fail to constitute any actionable independent injury under RICO. *See, e.g.*, FAC ¶¶ 9, 64, 156(a)-(b), 165. Courts have consistently held that "injury to expectancy or speculative interests," including losses from games of chance, such as gambling, do not constitute an "injury to business or property" to confer standing to assert RICO claims. *See Brill v. Postle*, No. 2:19-CV-02027 WBS AC, 2020 WL 2936688, at \*9 (E.D. Cal. June 3, 2020) (collecting cases). That is because when a plaintiff chooses to play a game of chance, they pay for— and receive—nothing more than the opportunity to win, and losing that game "do[es] not constitute harm to business or property interests." *See, e.g., id.*; *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1047 (N.D. Cal. 2025) (dismissing plaintiffs' RICO claims where plaintiffs "did not suffer [injury to business or property] when purchasing virtual chips because they received what they paid for . . . . a chance to win a virtual slot spin," nor did they suffer injury when they lost on a slot spin "because losing is injury to intangible expectations").

Here, Plaintiffs received exactly what they paid for: a chance to participate in games of chance and the opportunity to win prizes. *See* FAC ¶¶ 48-49 (alleging all games on Stake.us are "games of chance."). They do not allege they were promised—or entitled to—a guaranteed win. Having received precisely what they paid for—the opportunity to play and potentially win prizes— Plaintiffs have suffered no cognizable loss of "business or property" under RICO, let alone one caused by Stake.us's alleged RICO conduct.

Accordingly, Plaintiffs' alleged "gambling" losses do not confer RICO standing, and their claims under Section 1964(c) must be dismissed.

### 3. Plaintiffs' RICO Allegations Fail to Satisfy Rule 9(b).

Even if Plaintiffs had standing to assert their RICO claims their RICO allegations are not sufficiently pleaded, let alone with Rule 9(b) particularity.

To plausibly allege a RICO claim, a plaintiff must adequately plead the conduct of an enterprise through two or more predicate acts showing a pattern of racketeering activity. *Nunes*, 531 F. Supp. 3d at 1005, 1008, 1111. Where, as here, RICO predicate acts involve alleged wire fraud, they must be pleaded with Rule 9(b) particularity, which require the complaint allege "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *See Bowen v. adidas Am., Inc.*, 416 F. Supp. 3d 574, 578 (D.S.C. 2019) (quotation omitted); *Navient Sols*, 2020 WL 1644566, at *3 (Brinkema, J.). Moreover, the "Fourth Circuit [imposes] a high threshold on what constitutes a properly pled pattern" of predicate acts. *Williams v. Equity Holding Corp.*, 498 F. Supp. 2d 831, 842 (E.D. Va. 2007). Plaintiffs must demonstrate that "the racketeering activity was related and continuous," *Nunes*, 531 F. Supp. 3d at 1011, or "amount[s] to or pose[s] a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239.

Here, Plaintiffs assert four "predicate acts," three of which involve wire fraud: alleged "operation of illegal gambling business/enterprise" in Stake.us; and alleged wire fraud regarding misrepresentation of Stake.us's legality, streaming manipulation, and money laundering among Drake, Ross, and Nguyen using "proceeds" earned on the Platform. FAC ¶ 156. Plaintiffs further allege that the enterprise, or "Defendants, together with bot vendors, streaming-farm operators, and other facilitators known and unknown," shared a common purpose "to enrich the Defendants at Plaintiffs' expense through an illegal online gambling and streaming manipulation operation." *Id.* ¶¶ 151, 152. None of these allegations sufficiently support a RICO claim.

First, Plaintiffs' wire fraud claim based on misrepresentation of Stake.us's legality do not adequately describe the time, place, and content of any of the purported misrepresentations by Stake.us or any other Defendant, as required by Rule 9(b). Plaintiffs broadly assert that Stake.us

17

"holds itself out in its Terms and Conditions, which are available online" as a "social, safe, and free gaming experience," and Drake, Ross, and Nguyen "similarly promoted Stake"—without specifying whether any of these alleged promotions were specific to Stake.us. *See* FAC ¶ 156(b). But they do not identify when and where any Defendant made any such representations, or what representations Drake, Ross, and Nguyen made that are subject to Plaintiffs' claim, and therefore fall short of Rule 9(b). *See Bowen*, 416 F. Supp. 3d at 578-79 (RICO claims failed to satisfy the "who, what, when, where, and how" of Rule 9(b)).

Second, the alleged wire fraud predicate acts based on streaming manipulation and money laundering contain no allegations as to Stake.us at all. To adequately plead wire fraud, Plaintiffs must demonstrate "(1) defendant's knowing participation in a scheme to defraud; and (2) . . . interstate wire facilities were used in the furtherance of the scheme." *Glazer v. Meta Platforms, Inc.*, No. CV GLR-25-1560, 2025 WL 2958810, at *9 (D. Md. Oct. 17, 2025). But Plaintiffs allegations do not identify Stake.us's role in these alleged schemes, and are nonetheless made upon "information and belief," *see, e.g.*, FAC ¶¶ 107, 111, 118, 119, 127-133, 156(c)-(d), which are insufficient to satisfy Rule 9(b)'s heightened pleading standards." *Bowen*, 416 F. Supp. 3d at 578; *Dunn v. Chaposky*, No. 4:22-CV-00387-JD, 2022 WL 18495838, at *4 (D.S.C. Aug. 9, 2022) (dismissing RICO claims predicated on conduct "upon information and belief" and lacked the time, place, and contents of the alleged misrepresentations); *Ali v. Allergan USA, Inc.*, No. 1:12-CV-115 GBL/TRJ, 2012 WL 3692396, at *18 (E.D. Va. Aug. 23, 2012) (dismissing misrepresentation claims pled "upon information and belief").

Third, Plaintiffs' alleged predicate acts are not sufficiently related, as they do not share similar "results, participants, victims, or methods of commission." *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002). Allegations regarding the legality of the Platform and any

18

related misrepresentations are directed at Stake.us and Drake, and would require proof of each Plaintiff's viewing, access, reliance, and injury.    Wire fraud related to alleged streaming manipulation and associated money laundering, however, does not involve any alleged misconduct by Stake.us and involve alleged bots and streaming platforms far removed from Stake.us.    These alleged acts differ in purpose, victims, and methods of commission, and therefore, fail to show sufficient relatedness.    *See, e.g.*, *Doe v. Burkman*, No. 1:24-CV-00181 (RDA/WBP), 2025 WL 819115, at *7 (E.D. Va. Mar. 13, 2025) (dismissing RICO claims where the alleged schemes differed in purpose, results, victims, and methods of commission).

Finally, it logically follows that Plaintiffs fail to adequately allege the existence of a RICO enterprise in which each Defendant participated.    A RICO enterprise must share a common purpose and operate as "an entity separate and apart from the pattern of activity in which it engages." *See United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1981) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).    To adequately allege participation in conduct of an enterprise, a plaintiff must allege that defendant "participate[d] in the operation or management of the enterprise itself" and "not just [its] *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Plaintiffs have not done so here.    The FAC describes distinct activities with differing purposes, including the alleged operation and promotion of Stake.us for financial benefit; an alleged scheme to manipulate the streaming and popularity of Drake's music through other streaming platforms to financially benefit Drake and boost his popularity; and alleged money laundering between Drake, Ross, and Nguyen to finance the streaming manipulation scheme that ultimately benefits Drake.    FAC ¶¶ 154, 156.    Plaintiffs do not allege that Stake.us had knowledge of, engaged in, or benefited from any conduct related to the alleged streaming manipulation. Instead, the FAC suggests divergent interests—monetary benefit vs. popularity—rather than a

19

"common purpose." Therefore, Plaintiffs fail to show that the Defendants engaged in conduct of an enterprise.

Accordingly, Plaintiffs have failed to state a RICO claim, and Plaintiffs' RICO and RICO conspiracy claims should be dismissed as a result. *See, e.g.*, *Keen v. Keen*, No. 7:25-CV-00475, 2025 WL 2375210, at *6 (W.D. Va. Aug. 14, 2025), *reconsideration denied,* No. 7:25-CV-00475, 2026 WL 510376 (W.D. Va. Feb. 24, 2026) (dismissing RICO claims where "only vague and conclusory allegations regarding the alleged fraud" were offered as RICO predicate acts, "without providing any factual basis or substantiation . . . or explaining how the defendants carried out the purported fraudulent scheme"); *Harris v. Navy Fed. Credit Union*, No. 1:23-CV-00676, 2023 WL 5321083, at *1 (E.D. Va. July 24, 2023) (dismissing RICO claim where "Plaintiffs fail to allege any facts illustrating that Defendant committed two or more predicate acts of racketeering.").

### 4. Plaintiffs Fail to State a VCPA Claim Against Stake.us.

The FAC fails to state a valid VCPA claim against Stake.us. The VCPA prohibits the use of "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code § 59.1–200(14). To state a claim under the VCPA, a plaintiff must allege "(1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010); *see* Va. Code § 59.1–200(14). Fraud by misrepresentation claims must be supported by facts establishing that a plaintiff's reliance on those misrepresentations caused damages. *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260-61 (Va. 2014); *Curtis v. Propel Prop. Tax Funding, LLC*, No. 3:16-CV-00731-JAG, 2018 WL 717006, at *3 (E.D. Va. Feb. 5, 2018). Where, as here, plaintiffs seek treble damages under the VCPA, they must plead "willful" violations by a defendant. *Owens*, 764 S.E.2d at 260.

Because Plaintiffs' VCPA claims sound in fraud, the heightened pleading standards imposed by Rule 9(b) apply. *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th

20

Cir. 2015) (citation omitted).  Plaintiffs must also plead reliance with Rule 9(b) particularity.  *Reitz v. CVY of Alexandria, LLC*, No. 1:23-CV-959 (RDA/LRV), 2025 WL 895204, at *7 (E.D. Va. Mar. 24, 2025).

Here, Plaintiffs altogether fail to allege core elements of their VCPA claims, much less do so with the required particularity. For starters, the FAC fails to plead any specific misrepresentations or actionable deception to ground their VCPA claims against Stake.us. Although the FAC repeatedly alleges various forms of alleged promotional activity to be "fraudulent" and "deceptive," it fails to identify any specific misrepresentations made to Plaintiffs during these supposed promotions, much less do so with the requisite particularity. Instead, the FAC advances a bizarre amalgamation of theories related to "botting," "clipping," and "tipping" activity to explain how Defendants purportedly misled Plaintiffs into believing that "Stake.us was a lawful gambling experience when in fact it was not." *See* FAC ¶ 14.  Even if such vague and attenuated allegations of promotional activity could be plausibly construed as "fraudulent," Plaintiffs make no attempt to allege a plausible nexus between the "deceptive" promotional activity and Stake.us.  To the contrary, the FAC attributes that activity to nonparty Stake.com, a separate and distinct entity from Stake.us. *See, e.g., id.* ¶ 13 ("Stake.com's user-to-user Tipping . . . enabled payments to bot operators[.]").  These misplaced allegations fail to state a claim against Stake.us.

Nor do any statements that Plaintiffs attribute to Stake.us constitute misrepresentations. Plaintiffs allege that Stake.us describes itself as a "social casino" and "safe, harmless, and legal platform" that "does not offer real money gambling," *Id.* ¶¶ 58-61, 165, and otherwise sowed "the impression" that Virginia permits use of Stake.us by omitting it from the list of states that prohibit in the Terms, *id.* ¶ 63. But Plaintiffs fatally undercut their characterization of these statements as misrepresentations by conceding that Stake.us "does not hide the ball" when it comes to how

21

Stake.us games are "games of chance" with "random outcomes," in which players play may win *virtual casino coins*. *Id.* ¶¶ 48-49. These allegations are objectively consistent with Stake.us's statements as a "social casino" that "does not offer real money gambling," and thus foreclose Plaintiffs' misrepresentation theories. *See, e.g.*, *Langley v. Booz Allen Hamilton Holding Corp.*, No. 117CV696LMBTCB, 2018 WL 2108291, at *2 (E.D. Va. Feb. 8, 2018) (Brinkema, J.) (dismissing fraud claim where plaintiffs failed to "state with particularity the circumstances constituting fraud and the reason or reasons why each alleged fraudulent statement was in fact misleading") (citations omitted); *Rojas v. Delta Airlines, Inc.,* 425 F. Supp. 3d 524, 540-41 (D. Md. 2019) (finding that representations that were in fact true did not constitute affirmative misrepresentations of material fact sufficient to support fraud claims).

Moreover, even if the FAC plausibly alleged a misrepresentation applicable to Stake.us, the FAC does not specify which alleged misrepresentations, if any, each Plaintiff encountered or whether any of the Plaintiffs formed the "false impression" to which the FAC vaguely alludes, much less detail all the surrounding circumstances as required by Rule 9(b). Nor does the FAC allege each Plaintiff detrimentally relied on a specific misrepresentation applicable to Stake.us *before* registering for the Platform. *See, e.g.*, *Gentry v. Hyundai Motor Am., Inc.*, No. 3:13-CV-00030, 2017 WL 354251, at *7 (W.D. Va. Jan. 23, 2017) (dismissing VCPA claim where the complaint "contain[ed] broad, generic references to unspecified advertisements that [defendant] allegedly made and [plaintiff] was vaguely aware of at some undisclosed time"), *aff'd in part, dismissed in part sub nom. Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018); *Reitz*, 2025 WL 895204, at *7 (reliance not pled with sufficient particularity for VCPA claim where "the only reference with respect to reliance" was the "conclusory allegation that 'Plaintiff relied upon statements [by the defendant] to his detriment.'").

22

At most, Plaintiffs allege that they were "influenced to participate and to continue to participate after their initial participation on the Stake platform by the online promotional activities of Defendant Drake as viewed by each of the Plaintiffs."  FAC ¶ 24.  But vague allegations of promotional influence do not come close to satisfying the heightened pleading requirements imposed by Rule 9(b).  *See, e.g.*, *Pop v. Lulifama.com LLC*, 145 F.4th 1285, 1296-97 (11th Cir. 2025) (affirming dismissal of consumer fraud claims under Rule 9(b) based on posts by undisclosed paid influencer "pretending [to be] disinterested and unaffiliated consumers," where plaintiff failed to allege when those posts were made or when and how plaintiff saw and relied on them to purchase the products at issue).  While Plaintiffs claim that Drake allegedly livestreamed his gameplay on Stake.us with Ross, they do not identify what Drake and Ross allegedly said on such live streams, or where *Plaintiffs* saw these livestreams or Drake's other "online promotional activities," let alone that Plaintiffs saw them on any website, marketing material, or platform by Stake.us.  *See* FAC ¶¶ 72, 75.  Nor do Plaintiffs allege what role, if any, Stake.us played in Drake's purported "deception."  *Jones v. Shooshan*, 855 F. Supp. 2d 594, 603-04 (E.D. Va. 2012) (Brinkema, J.) (dismissing fraud claims where "plaintiff [made] only vague and conclusory allegations" that one defendant acted fraudulently and "totally fail[ed] to specify statements or conduct" by any of the other defendants to support his claim).

Compounding these deficiencies, Plaintiffs systematically conflate Stake.us—the only Stake entity named as a Defendant—with Stake.com, a separate nonparty entity.  The FAC expressly defines "Stake" to encompass both Stake.com and Stake.us but only "where applicable," FAC at 2 n.1, and then attributes sweeping allegations to "Stake" without specifying which entity engaged in the alleged conduct.  For example, Plaintiffs allege they relied on Drake's endorsement but attribute his endorsement deal and promotional payments to "Stake" without specifying which

entity paid him or directed his promotions.[10]  *Id.* ¶¶ 8, 26, 69.  Likewise, Plaintiffs allege Drake and Ross gambled with "house money provided by Stake," but do not identify whether Stake.us or Stake.com allegedly supplied those funds.  *Id.* ¶ 80.  Plaintiffs cannot satisfy Rule 9(b) by guessing which Stake entity made the alleged representations underlying their claims.  *See, e.g.*, *Farooq v. AmeriGas Propane, Inc.*, No. 1:13CV711 LMB/IDD, 2013 WL 3894165, at *3 (E.D. Va. July 25, 2013) (Brinkema, J.) (dismissing fraud claim where complaint was "unclear and confusing as to who said what and when, and to whom; who relied on those statements").

For all these reasons, Plaintiffs have failed to adequately plead any misrepresentations by Stake.us on which they relied, thereby requiring dismissal of their VCPA claim.

### 5.  Plaintiffs Have Not Alleged a "Loss" Under the VCPA.

Plaintiffs' failure to adequately plead reliance also dooms their ability to adequately plead VCPA damages.  "In order for a claimant to recover for a VCPA violation, his loss must be the result of, that is caused by, the violation," which "cannot exist without the consumer's reliance on the misrepresentation." *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 188 (E.D. Va. 2005).

In any event, Plaintiffs have not sufficiently alleged VCPA losses anyway.  The VCPA provides that "[a]ny person who suffers loss as the result of a violation of [the statute] shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater." Va. Code § 59.1–204(A).  But Plaintiffs allege that they "paid [S]take.us for Gold Coins or Stake Cash" and lost "money . . . on that gambling." *See* FAC ¶ 158. Plaintiffs have not alleged what actual losses they suffered when they have not identified the amount they claim to have lost.  And to the extent Plaintiffs seek recovery for "overpayments and loss of the benefit of their bargain," *id.* ¶ 168, Plaintiffs have not adequately alleged facts allowing "the court to determine the economic value

---

[10] Plaintiffs are intentionally vague and cite nothing to support the allegation that Drake specifically promoted Stake.us.

of their alleged lost benefit without resorting to mere conjecture," as they must. *See In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-CV-269 (MSN/JFA), 2022 WL 10197651, at *9-10. (E.D. Va. Oct. 17, 2022). Absent actual loss, Plaintiffs' VCPA claim should be dismissed. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 904 (C.D. Cal. 2024) (dismissing VCPA claim with prejudice where plaintiff "fail[ed] to adequately allege actual loss").[11]

### 6. Plaintiffs' Claim for Injunctive Relief Under the VCPA Fails.

Plaintiffs also seek injunctive relief among other remedies, FAC ¶ 169, but private parties have no entitlement to such relief under the VCPA. *Physicians Commi. for Responsible Medicine v. Gen. Mills, Inc.*, 283 F. App'x. 139 (4th Cir. 2008); Va. Code § 59.1-204. Accordingly, Plaintiffs' request for injunctive relief under the VCPA claim should be dismissed.

### D. Plaintiffs Are Not Entitled to a Declaratory Judgment.

Plaintiffs' request for a declaratory judgment from this Court to hold Stake.us's mandatory arbitration clause and class action waiver "void and unenforceable" is inappropriate. First, because this Court does not have jurisdiction over Plaintiffs' other claims, it cannot exercise jurisdiction solely to award declaratory relief under 28 U.S.C. § 2201. *See Howes v. Fin. Indus. Regul. Auth., Inc.*, 395 F. Supp. 3d 608, 616 n.8 (D. Md. 2019) ("A district court cannot exercise jurisdiction to award declaratory relief under the [Declaratory Judgment] Act unless it possesses an independent basis for jurisdiction.") (citations omitted). Second, a party cannot seek declaratory relief to avoid arbitration.[12] *See Brenco Enters., Inc. v. Bitesquad.com, LLC*, 297 F. Supp. 3d 608, 613 (E.D. Va. 2018). Third, "a declaratory judgment action . . . . should not be used 'to try a controversy by

---

[11] Even if Plaintiffs identified any actual loss from use of the Platform, and if use of the Platform may be considered "gambling," any monetary losses Plaintiffs may have suffered are recoverable only under Virginia's gambling statute, Va. Code § 11-15.

[12] Stake.us incorporates by reference the arguments in its Arbitration Motion.

25

piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" *Argonaut Great Cent. Ins. Co. v. McDowell Cnty.*, 626 F. Supp. 2d 554, 559 (W.D.N.C. 2009) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256-57 (4th Cir. 1996)). As explained in Stake.us's parallel Arbitration Motion, the enforceability of the Terms should be determined in the first instance by an arbitrator. ECF No. 17. *See, e.g.*, *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 440 (4th Cir. 2004) (affirming dismissal of declaratory judgment action seeking to enjoin arbitration after affirming instant dispute was arbitrable).

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed. Plaintiffs have already had an opportunity to amend their claims pursuant to Stake.us's February 3, 2026 "demand letter" that identified gaps in Plaintiffs' Complaint.  *See* FAC ¶ 174; Ex. A, Feb. 3, 2026 Letter.  Plaintiffs' FAC has not cured any pleading deficiencies and only further underscores the shortcomings in Plaintiffs' claims.  Amendment would be futile, and Plaintiffs' claims should be dismissed with prejudice. *See, e.g.*, *Walters v. McMahen*, 795 F. Supp. 2d 350, 360 (D. Md. 2011) (dismissing with prejudice RICO claims where "amendment would be futile in light of the [complaint's] fundamental deficiencies" that remained after one amendment), *aff'd*, 684 F.3d 435 (4th Cir. 2012); *Curtis*, 2018 WL 717006, at \*4 (dismissing VCPA claims with prejudice for failing to allege reliance and loss and to satisfy Rule 9(b)).

26

Dated: May 6, 2026

Respectfully submitted,

By: */s/ Hillary Dang*

Hillary Dang (VSB No. 92188)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

David McGill*
Diana Szego Fassbender*
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
dmcgill@orrick.com
dszego@orrick.com

Paige Pavone*
Marc R. Shapiro*
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
ppavone@orrick.com
mrshapiro@orrick.com

*Pro Hac Vice forthcoming*

*Attorney for Defendant Sweepsteaks Ltd. d/b/a Stake.us*

27

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I electronically filed the foregoing Motion to Dismiss on behalf of Defendant Stake.us with the Clerk of the Court for the United States District Court for the District of Eastern Virginia using the CM/ECF system.

*/s/ Hillary Dang*

Hillary Dang

28