**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| LaShawnna Ridley, Regina Ridley, Tiffany Hines, Stephine Hines, Preddy Ray, Dekeya Adams, Ricola Lawshea, and Latosha Sanderlin (STAKE.US USERS WITHIN THE UNITED STATES), Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SWEEPSTEAKS LTD. d/b/a STAKE.US, KICK STREAMING PTY LTD., AUBREY DRAKE GRAHAM p/k/a DRAKE, ADIN ROSS, AND GEORGE NGUYEN, <br><br> Defendants. | Case No. 1:25-cv-2511-LMB-WEF |

**DEFENDANT KICK STREAMING PTY LTD.'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND .......................................................................................................... 1

    A.    Kick.................................................................................................................. 1

    B.    Plaintiffs ......................................................................................................... 2

III.    LEGAL STANDARD.................................................................................................. 2

IV.    ARGUMENT............................................................................................................... 3

    A.    This Court Cannot Exercise Personal Jurisdiction over Kick................................ 3

        1.    Kick Is Not Subject to General Personal Jurisdiction in Virginia. ............. 3

        2.    Specific Personal Jurisdiction Does Not Exist Over Kick......................... 3

            a)    Kick Did Not Purposefully Avail Itself of the Privilege of Conducting Activities in Virginia. ...................................................... 3

            b)    Plaintiffs' Claims Against Kick Do Not Arise Out of Activities Directed at Virginia. ....................................................... 5

            c)    Exercising Personal Jurisdiction Over Kick Would Not Be Constitutionally Reasonable. .......................................................... 6

    B.    Plaintiffs Fail to State Any Claim for Relief. .......................................................... 6

        1.    Section 230 of the Communications Decency Act Bars Plaintiffs' Claims. ....................................................................................................... 6

            a)    The FAC Alleges Facts That Place Kick Within the Definition of "Interactive Computer Service Provider" under Section 230. ......................................................................... 7

            b)    Plaintiffs' Claims Treat Kick as the Publisher or Speaker of Third-Party Information................................................................. 8

            c)    The FAC Alleges Another Information Content Provider Supplied the Purported Misinformation........................................ 9

        2.    Plaintiffs' RICO Claims Against Kick Fail. ............................................ 11

        3.    Plaintiffs' VCPA Claims Fail to Satisfy Rule 9(b) .................................. 13

        4.    Plaintiffs Have Not Alleged a "Loss" Under the VCPA. ......................... 16

        5.    Plaintiffs' Claim for Injunctive Relief Under the VCPA Fails................. 17

    C.    Dismissal of Plaintiffs' Declaratory Judgment Act Claim Under 28 U.S.C. § 2201 Is Also Warranted. ..................................................................................... 18

V.    CONCLUSION.......................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. NVR Homes, Inc.*,
193 F.R.D. 243 (D. Md. 2000)...............................................................................................15

*ALS Scan, Inc v. Digital Serv. Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002) ..................................................................................................4

*Attias v. CareFirst, Inc.*,
365 F. Supp. 3d 1 (D.D.C. 2019)...........................................................................................17

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .................................................................................................9

*Beychok v. Baffert*,
No. 3:24-CV-100-CHB, 2024 WL 5112755 (W.D. Ky. Dec. 13, 2024)................................19

*Curtis v. Propel Prop. Tax Funding, LLC*,
No. 3:16-CV-00731-JAG, 2018 WL 717006 (E.D. Va. Feb. 5, 2018)...................................13

*Does 1–9 v. Murphy*,
No. 7:20-cv-00947, 2025 WL 2533961 (D.S.C. Sept. 3, 2025) ...............................................7

*Farooq v. AmeriGas Propane, Inc.*,
No. 1:13CV711, 2013 WL 3894165 (E.D. Va. July 25, 2013) ..............................................16

*GE Inv. Priv. Placement Partners II v. Parker*,
247 F.3d 543 (4th Cir. 2001) .................................................................................................19

*Gentry v. Hyundai Motor Am., Inc.*,
No. 3:13-CV-00030, 2017 WL 354251 (W.D. Va. Jan. 23, 2017), *aff'd in
part, dismissed in part sub nom. Adbul-Mumit v. Alexandria Hyundai, LLC*,
896 F.3d 278 (4th Cir. 2018) .................................................................................................16

*Glazer v. Meta Platforms, Inc.*,
No. CV GLR-25-1560, 2025 WL 2958810 (D. Md. Oct. 17, 2025) ........................................7

*Harris v. Navy Fed. Credit Union*,
No. 1:23-CV-00676, 2023 WL 5321083 (E.D. Va. July 24, 2023)........................................19

*Henderson v. Source for Pub. Data, L.P.*,
53 F.4th 110 (4th Cir. 2022) .....................................................................................7, 8, 9, 10

*Jones v. Shooshan*,
855 F. Supp. 2d 594 (E.D. Va. 2012) .....................................................................................15

ii

*Jones v. Twitter, Inc.*,
No. CV RDB-20-1963, 2020 WL 6263412 (D. Md. Oct. 23, 2020) ........................................8

*Khashoggi v. NSO Group Techs. Ltd.*,
700 F. Supp. 3d 384 (E.D. Va. 2023), *aff'd*, 138 F.4th 152 (4th Cir. 2025).........................4, 6

*Khashoggi v. NSO Grp. Techs. Ltd.*,
138 F.4th 152 (4th Cir. 2025) ...............................................................................................3, 5

*Klayman v. Zuckerberg*,
910 F. Supp. 2d 314 (D.D.C. 2012) .........................................................................................9

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) .....................8

*Lewis v. Willough at Naples*,
311 F. Supp. 3d 731 (D. Md. 2018) ..........................................................................................6

*M.P. by & through Pinckney v. Meta Platforms Inc.*,
127 F.4th 516 (4th Cir. 2025), *cert. denied sub nom. M. P. By & Through Pin
v. Meta Platforms Inc.*, 146 S. Ct. 287 (2025) ......................................................................7, 9

*McNeal v. Calvin*,
No. 4:23-CV-01732-SEP, 2026 WL 879228 (E.D. Mo. Mar. 31, 2026)...................................8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) .......................................................................................7, 10, 11

*Nigh v. Koons Buick Pontiac GMC, Inc.*,
143 F. Supp. 2d 535 (E.D. Va. 2001) .....................................................................................16

*Orr v. Keystone RV Co.*,
736 F. Supp. 3d 389 (E.D. Va. 2024) .....................................................................................16

*Owens v. DRS Auto. Fantomworks, Inc.*,
764 S.E.2d 256,260 (Va. 2014)...............................................................................................14

*Polk v. Crown Auto, Inc.*,
228 F.3d 541 (4th Cir. 2000) ..................................................................................................17

*Project Honey Pot v. John Does*,
No. 1:11CV15 LMB/JFA, 2012 WL 1854184 (E.D. Va. May 21, 2012) .................................5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .....................................................................................17

*Reitz v. CVY of Alexandria, LLC*,
No. 1:23-CV-959, 2025 WL 895204 (E.D. Va. Mar. 24, 2025)...............................................16

iii

*Richards v. Google LLC*,
No. 5:25-CV-00082, 2026 WL 353617 (W.D. Va. Feb. 9, 2026) ............................................14

*Rigsby v. GoDaddy, Inc.*,
59 F.4th 998 (9th Cir. 2023) ..................................................................................................11

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*,
911 F.3d 192 (4th Cir. 2018) ...............................................................................................3, 4

*United States ex rel. Taylor v. Boyko*,
39 F.4th 177 (4th Cir. 2022) .................................................................................................14

*Vision Motor Cars, Inc. v. Valor Motor Co.*,
981 F. Supp. 2d 464 (M.D.N.C. 2013) ....................................................................................4

*Wilson v. Twitter*,
No. 3:20-CV-00054, 2020 WL 3410349 (S.D.W. Va. May 1, 2020).......................................8

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) .........................................................................................7, 9, 10

**Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201.........................................................................2, 19

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962
*et. seq* ..................................................................................................................... *passim*

Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230 *et seq.* ............. *passim*

Virginia Consumer Protection Act (VCPA), Va. Code § 59.1-196 *et seq*............................ *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 9(b)...........................................................................11, 12, 13, 14, 16, 17, 19

## I.    INTRODUCTION

Plaintiffs bring this putative nationwide and Virginia class action against multiple Defendants, including Kick Streaming Pty Ltd. ("Kick"), to recover the money they allegedly spent on Defendant Sweepsteaks Ltd. d/b/a Stake.us's ("Stake.us") online social gaming platform. Kick is not an online social gaming platform; it only operates a livestreaming platform. According to Plaintiffs, Kick hosted livestreaming of persons playing games on Stake.us's gaming platform, including co-Defendants Aubrey Drake Graham ("Drake") and Adin Ross.  Plaintiffs claim that this livestreaming facilitated "illegal gambling," which, in turn, caused Plaintiffs to unwittingly finance a "bot" army to fabricate Drake's popularity.  Based on this attenuated conspiracy theory, Plaintiffs seek to hold Kick liable for claims under Virginia consumer protection law and federal organized crime law by Plaintiffs and the nationwide and Virginia classes they purport to represent.

Because Plaintiffs' claims against Kick fail for many of the same reasons that doom their claims against Stake.us, Kick joins in and incorporates by reference certain of Stake.us's arguments for dismissal.  As with Stake.us, the First Amended Complaint ("FAC") fails to establish (1) this Court's jurisdiction over Plaintiffs' claims against Kick; or (2) any element of Plaintiffs' claims against Kick.  Accordingly, Plaintiffs' claims against Kick should be dismissed.

## II.    BACKGROUND

### A.    Kick

Defendant Kick Streaming Pty Ltd. ("Kick") operates a livestreaming platform. FAC, ECF No. 9 ¶ 7. Kick is an Australian Proprietary Company with its principal place of business in Australia. *Id.* ¶ 31. Kick does not have any offices in the United States and does not have any physical presence in Virginia. Kick allows users to livestream various activities, including their gaming activities on Stake.us. *Id.* ¶ 65. According to Plaintiffs, Kick entered into promotional contracts with various individuals, including Drake and Ross, to livestream their gameplay

allegedly on Stake.us and Stake.com, a separate website (and nonparty) that Plaintiffs allege to be an "international online casino" that does not offer access to users in the United States. *Id.* ¶¶ 2, 46, 68-76. Drake is a well-known musician and one of the most streamed artists of all time on Spotify. *Id.* ¶ 42. Ross is an online media personality and streamer. *Id.* ¶ 43. Although Plaintiffs falsely allege Kick to be "a betting platform", *id.* ¶ 22, Plaintiffs do not allege that Kick offers any games of chance and elsewhere allege Kick to be a "streaming platform." *See, e.g., id.* ¶ 7.

### B.        Plaintiffs

Plaintiffs LaShawnna Ridley, Regina Ridley, Tiffany Hines, Stephine Hines, Preddy Ray, Dekeya Adams, Ricola Lawshea, and Latosha Sanderlin are all allegedly "citizens of the Commonwealth of Virginia" and allegedly used Stake.us to their financial detriment. *Id.* ¶¶ 9, 29, 158. Although Plaintiffs allege that they "signed up for Stake[.us] accounts in reliance on Drake's endorsement of Stake.us and after seeing his promotional content depicting Stake.us as a legitimate platform," *id.* ¶¶ 14, 88, Plaintiffs do not allege that they viewed this alleged promotional content on Kick.

Plaintiffs nonetheless seek to hold Kick liable to Plaintiffs and both a nationwide class, and "in the alternative," a Virginia class of Stake.us users for (1) violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d); and (3) violation of the Virginia Consumer Protection Act (VCPA), Va. Code § 59.1-196 *et seq.*; and they seek a declaratory judgment under the (4) Declaratory Judgment Act, 28 U.S.C. § 2201 regarding Stake.us's—and not Kick's—Terms and Conditions. *Id.* ¶¶ 148-183.

### III.    LEGAL STANDARD

Kick incorporates by reference the legal standard set forth in Stake.us's Motion to Dismiss. *See* Def. Stake.us's Mem. in Supp. of Mot. to Dismiss ("Stake.us Mot.") at 5-6, ECF No. 19.

IV.     **ARGUMENT**

    A.     **This Court Cannot Exercise Personal Jurisdiction over Kick.**

The Court should dismiss Plaintiffs' claims against Kick for lack of personal jurisdiction. Personal jurisdiction may be either general or specific. *See Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018). None of these exist here over Plaintiffs' claims against Kick.

        1.     **Kick Is Not Subject to General Personal Jurisdiction in Virginia.**

Kick adopts and incorporates by reference Stake.us's legal grounds for lack of general personal jurisdiction. Stake.us Mot. at 6. As with Stake.us, Kick is not incorporated or headquartered in Virginia. By Plaintiffs' own allegations, Kick "is an Australian Proprietary Company with its principal place of business . . . [in] Melbourne, Victoria, . . . Australia." FAC ¶¶ 31, 41. No other allegations support a finding that Kick is otherwise "at home" in Virginia to establish general jurisdiction.

        2.     **Specific Personal Jurisdiction Does Not Exist Over Kick.**

Kick adopts and incorporates by reference Stake.us's legal grounds for lack of specific personal jurisdiction too. *See* Stake.us Mot. at 7-12. Plaintiffs have not alleged facts supporting that: (1) Kick purposefully availed itself of the privilege of conducting activities in the Commonwealth; (2) Plaintiffs' claims arise out of those activities directed at the Commonwealth; or (3) the exercise of personal jurisdiction over Kick would be constitutionally reasonable. *See Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159 (4th Cir. 2025).

            a)     **Kick Did Not Purposefully Avail Itself of the Privilege of Conducting Activities in Virginia.**

As with Stake.us, Kick cannot be haled into a court in Virginia where it has not purposefully availed itself of conducting business there. Fourth Circuit courts consider a number

of factors in evaluating purposeful availment, as stated in Stake.us's Motion to Dismiss, and require out-of-state defendants' alleged conduct to have a "substantial" connection to the forum before exercising jurisdiction.  *See* Stake.us Mot. at 7-8 (citing *Sneha Media*, 911 F.3d at 198-99).

Plaintiffs' allegations do not demonstrate that Kick purposefully availed itself of conducting business in Virginia.  Kick is an Australian Proprietary Company headquartered in Melbourne, Australia.  FAC ¶ 41.  The FAC describes Kick as a livestreaming platform that "partnered with high profile streamers like Drake and Ross to promote Stake through their livestreams on Kick."  *Id*. ¶ 154(b).  But the FAC does not allege that Kick directed any action—whether advertising, solicitation, livestreams, or any other activity—at Virginia.

The only jurisdictional allegation that mentions Kick is Plaintiffs' boilerplate assertion that Defendants, including Kick, "transacted business . . . through interstate wires and platforms accessible and operated in this District."  *Id.* ¶ 38.  Plaintiffs also generically allege that Defendants "engaged in deceptive and misleading acts and practices in connection with consumer transactions affecting Virginia residents."  *Id.* ¶ 165.  But such "[b]lanket conclusory allegations as to multiple defendants are insufficient" to establish personal jurisdiction.  *Vision Motor Cars, Inc. v. Valor Motor Co*., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013).  Indeed, none of these allegations are supported with "sufficient, non-conclusory facts or plausible assertions." *Khashoggi v. NSO Group Techs. Ltd.*, 700 F. Supp. 3d 384, 397 (E.D. Va. 2023), *aff'd*, 138 F.4th 152 (4th Cir. 2025) (Brinkema, J.).  Accordingly, they "need not be considered." *Vision Motor Cars*, 981 F. Supp. 2d at 471.

As explained in Stake.us's Motion, "[a] person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." Stake.us Mot. at 9 (quoting *ALS Scan, Inc v. Digital Serv. Consultants,*

4

*Inc.*, 293 F.3d 707, 714=15 (4th Cir. 2002).  Plaintiffs do not allege that they—or anyone—accessed Kick's platform *in Virginia*.  And the mere accessibility of a website in Virginia, without more, cannot be the basis for jurisdiction in this Virginia Court.  *See Khashoggi*, 138 F.4th at 162; *Project Honey Pot v. John Does,* No. 1:11CV15 LMB/JFA, 2012 WL 1854184, at *7 (E.D. Va. May 21, 2012) (Brinkema, J.).

Because Plaintiffs do not allege that Kick purposefully aimed any conduct at Plaintiffs in Virginia, this Court cannot exercise specific personal jurisdiction over Kick.

<b>b)    Plaintiffs' Claims Against Kick Do Not Arise Out of Activities<br>Directed at Virginia.</b>

Plaintiffs have also failed to adequately plead that their claims arise out of Kick's conduct directed at and conducted in Virginia.  As explained in Stake.us's Motion, a defendant's "activity in the forum state" must be "the genesis of the dispute" to satisfy this jurisdictional requirement. Stake.us Mot. at 10 (quoting *UMG Recordings*, 963 F.3d at 354).  But Plaintiffs fail to tie any alleged conduct by Kick in Virginia to their claims.  *Cf.* Stake.us Mot. at § IV.A.2.b.

The heart of Plaintiffs' VCPA and RICO claims against Kick arise out of its alleged role in promoting "illegal gambling" and facilitating "artificial" streaming. FAC ¶¶ 1, 7-9, 64-68, 148-159, 165-69. But as discussed above, the FAC alleges that Kick is a livestreaming platform, founded in Australia, that entered into contracts with streamers like Drake and Ross to broadcast content, ostensibly to promote "Stake"—a term that Plaintiffs use to flexibly refer to either Stake.us or nonparty Stake.com.[1] *Id*. at ¶¶ 41, 66-68, 154. Nowhere do Plaintiffs allege that Kick conducted any of these activities specifically directed at or in Virginia. Nor do they allege how Kick's actions caused any injury in Virginia; indeed, Plaintiffs do not even allege that any Plaintiff

---

[1] The FAC expressly defines "Stake" to include both Stake.com and Stake.us. FAC at 2 n.1.

5

viewed any promotions on Kick, or accessed Kick's platform, in Virginia. The FAC thus offers no plausible basis for this Court to exercise jurisdiction over Plaintiffs' claims against Kick.

**c)      Exercising Personal Jurisdiction Over Kick Would Not Be Constitutionally Reasonable.**

Even if the first two prongs were satisfied—again, they are not—haling Kick into this Court would be constitutionally unreasonable.  As with Stake.us, the burden on Kick, an Australian Proprietary Company, of litigating in Virginia is significant where Kick is incorporated abroad, does not own property in Virginia, and does not have employees or persons authorized to act on its behalf in Virginia.  *See* Stake.us Mot. at 11-12 (citing *Khashoggi*, 700 F. Supp. 3d. at 400-01).  And the FAC offers no basis for this Court to infer that Kick has evidence or witnesses in Virginia.  Requiring Kick to litigate in Virginia would impose a substantial burden grossly disproportionate to any connection—if any—it has to Virginia, particularly where the FAC fails to allege any such connection.  Even if Plaintiffs had alleged that litigating this action in Virginia would be more convenient for them, which they did not, "plaintiff[s] cannot be the only link between the defendant and the forum." *See* Stake.us Mot. at 12 n.5 (quoting *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 736 (D. Md. 2018)). Given the total absence of allegations of Kick directing conduct into Virginia, exercising personal jurisdiction over Kick in this forum would offend constitutional due process.

**B.      Plaintiffs Fail to State Any Claim for Relief.**

Even if Plaintiffs had alleged a plausible basis to exercise jurisdiction over Kick, the FAC would still warrant dismissal as against Kick for failure to state valid claims.

**1. Section 230 of the Communications Decency Act Bars Plaintiffs' Claims.**

As a threshold matter, Plaintiffs' claims against Kick are precluded by Section 230, which "creates a federal immunity to any cause of action that would make service providers liable for

6

information originating with a third-party user of the service." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); 47 U.S.C. § 230(c)(1). Claims against a defendant should be dismissed pursuant to Section 230 if: (1) the defendant is a "provider or user of an interactive computer service"; (2) plaintiff's claims hold the defendant "responsible 'as the publisher or speaker of any information'"; and (3) the relevant information was "provided by another information content provider." *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 119 (4th Cir. 2022) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009)); *see also Does 1–9 v. Murphy*, No. 7:20-cv-00947, 2025 WL 2533961, at *14 (D.S.C. Sept. 3, 2025). Plaintiffs' claims against Kick satisfy all three elements and thus warrant dismissal.

> **a)      The FAC Alleges Facts That Place Kick Within the Definition of "Interactive Computer Service Provider" under Section 230.**

Plaintiffs allege that Kick is a livestreaming platform that enables access by multiple users to its servers and hosts user-generated livestreams and other content. *See* FAC ¶¶ 7, 65. Such activity qualifies as "interactive computer services" warranting Section 230 protection. An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts have routinely construed this to include platforms accessible by multiple users and hosts user-generated content. *See e.g.*, *M.P. by & through Pinckney v. Meta Platforms Inc.*, 127 F.4th 516, 524 (4th Cir. 2025) (recognizing that the parties did not dispute that "Facebook is a provider or user of an interactive computer service"), *cert. denied sub nom. M. P. By & Through Pin v. Meta Platforms Inc.*, 146 S. Ct. 287 (2025); *Glazer v. Meta Platforms, Inc.*, No. CV GLR-25-1560, 2025 WL 2958810, at *3 (D. Md. Oct. 17, 2025) (finding Meta to be an interactive computer service because it was alleged to "provide a platform where users could interact with content and advertisements"); *McNeal v. Calvin*, No. 4:23-CV-01732-SEP, 2026 WL

7

879228, at *7 (E.D. Mo. Mar. 31, 2026) ("Section 230 immunizes interactive computer services like YouTube and Tik Tok") (cleaned up); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020) (finding YouTube and Google to be providers of an interactive computer service), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Wilson v. Twitter*, No. 3:20-CV-00054, 2020 WL 3410349, at *11 (S.D.W. Va. May 1, 2020) (finding that Twitter provides the "prototypical service" warranting Section 230 protections because "it provides a forum for individuals to post comments . . . to which others may then respond"), *R&R adopted*, No. CV 3:20-0054, 2020 WL 3256820 (S.D.W. Va. June 16, 2020)[2].

Based on Plaintiffs' allegations, Kick squarely falls into this category.  The FAC alleges that Kick is a "streaming platform" that allows content creators to share and broadcast content to large audiences via Kick's users.  FAC ¶¶ 7, 65, 68, 73, 153(c) (referencing the ability to "post content" and "livestream" on Kick).  The FAC also alleges that Kick users may interact with content by subscribing to the creator's channel, among other things.  *See, e.g.*, *id.* ¶ 76 (referencing Ross's "followers" on Kick).  These allegations place Kick on common ground with Meta, Vimeo, YouTube, and Tik Tok, platforms that courts have repeatedly found to be interactive computer service providers under Section 230.  Thus, the first element of Section 230 is satisfied here.

### b)    Plaintiffs' Claims Treat Kick as the Publisher or Speaker of Third-Party Information.

Plaintiffs' allegations against Kick likewise satisfy the second element of Section 230.  A claim that seeks to "hold[] [a] defendant liable . . . [by] treating them as a publisher" falls within Section 230's purview.  *See Henderson*, 53 F.4th at 124.   This element focuses on "whether the alleged conduct 'derives from the defendant's status or conduct as a publisher or speaker[,]'" and

---

[2] *See also Jones v. Twitter, Inc.*, No. CV RDB-20-1963, 2020 WL 6263412, at *3 (D. Md. Oct. 23, 2020) (same).

8

if it does, Section 230(c)(1) "precludes liability." *Klayman v. Zuckerberg*, 910 F. Supp. 2d 314, 319 (D.D.C. 2012) (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (internal quotations omitted)).

Here, Kick's only alleged role in the asserted VCPA and RICO misconduct is publishing the livestreaming of purportedly misleading content to its users. Plaintiffs allege that Kick is liable for "recruit[ing] individuals to livestream their gambling on Stake.us, to create advertisements for Stake.us, and to . . . entice Plaintiffs and others across the United States to gamble and lose money at the Stake.us casino." FAC ¶ 65. They also allege Kick "partnered with high profile streamers like Drake and Ross to promote Stake *through [Drake and Ross's] livestreams* on Kick." *Id*. ¶ 154(b) (emphasis added). In other words, Plaintiffs seek to hold Kick liable for disseminating the promotional content of others to its users, the quintessential function of a publisher under Section 230. *See Zeran*, 129 F.3d at 330 (Section 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content"); *Henderson*, 53 F.4th at 121 (explaining that a "publisher" under Section 230 is "someone who intentionally or negligently disseminated information to third parties").

### c) The FAC Alleges Another Information Content Provider Supplied the Purported Misinformation.

Finally, the third element is satisfied because the alleged misrepresentations underlying Plaintiffs' claims were "provided by another information content provider." 47 U.S.C. § 230(c)(1). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id*. § 230(f)(3). An interactive computer service may only be

considered an information content provider precluding Section 230 protection if it "materially contributed to what made the content unlawful." *Henderson*, 53 F.4th at 128.

Here, Plaintiffs allege that third party content creators, including Drake, Ross, and Nguyen, published promotional content on Kick. As for Kick, Plaintiffs allege only that it "recruited individuals to livestream" and entered into related agreements with Drake and Ross. FAC ¶¶ 65, 68. They allege only two instances in which Ross "livestreamed himself on Kick." *Id.* ¶¶ 73, 113. Although Plaintiffs frame Kick as "designed to promote gambling at Stake's casinos," *id.* ¶ 65, they do not ascribe any purported misrepresentation or any other deceptive content to Kick.

At most, Plaintiffs allege that Kick "entered into eight-figure contracts regarding streaming content, including with Defendants Drake and Ross" and "partnered with . . . Drake and Ross to promote Stake through their livestreams on Kick." *Id*. ¶¶ 68, 154(b). But "an interactive computer service is not responsible for developing the unlawful information unless they have gone beyond the exercise of traditional editorial functions and materially contributed to what made the content unlawful." *Henderson*, 53 F.4th at 128; *Nemet*, 591 F.3d at 257-58. Here, even if Kick contracted with Drake and Ross to promote Stake.us, Plaintiffs do not allege that Kick scripted any deceptive promotional content, directed any livestreams, or otherwise contributed to any alleged misrepresentations published on Kick. And the mere exercise of editorial discretion as to which content creators to feature on a platform does not constitute a material contribution to the alleged unlawfulness of the content itself. *See Zeran*, 129 F.3d at 330 ("deciding whether to publish" is a traditional editorial function protected by Section 230); *Nemet*, 591 F.3d at 258 (requiring "something more" than traditional editorial functions to defeat immunity).

The Fourth Circuit's decision in *Nemet* is instructive. There, the court held that a consumer review website was subject to Section 230 immunity against defamation claims even though the

10

website operator had solicited consumer complaints, steered them into specific categories, and allegedly contacted consumers to help draft or revise complaints that were the subject of the defamation claims. *Id*. at 257-58. The court concluded that these activities did not "show, or even intimate, that [the defendant] contributed to the allegedly fraudulent nature of the comments at issue." *Id*. at 258 (citation omitted). If soliciting, organizing, and editing consumer reviews does not defeat Section 230 immunity, then Kick's alleged contracting with content creators for the broadcast of livestreams and other promotional content, without any allegations of substantive contributions to that content, cannot preclude Section 230 immunity either. *See, e.g.*, *Rigsby v. GoDaddy, Inc*., 59 F.4th 998, 1008 (9th Cir. 2023) (finding that GoDaddy was not acting as an information content provider where the "complaint is devoid of allegations that GoDaddy contributed to the content of [a] gambling site"). Accordingly, the information at issue was "provided by another information content provider," and the third element of Section 230 is satisfied here. 47 U.S.C. § 230(c)(1).

Plaintiffs' claims against Kick are thus barred as a matter of law and must be dismissed. *See Nemet*, 591 F.3d at 254-55 (Section 230 immunity should be "accorded effect at the first logical point in the litigation process" to protect websites from liability and "having to fight costly and protracted legal battles").

### 2.    Plaintiffs' RICO Claims Against Kick Fail.

At the outset, for the reasons stated in Stake.us's Motion, Plaintiffs do not adequately allege any injury to "business or property," let alone any injury due to Kick's conduct, required for standing to assert their claims against Kick. *See* Stake.us Mot. at 15-16; *see infra* at 16-17. Plaintiffs' alleged losses stem from their voluntary participation in games on Stake.us—not from any transaction with or on Kick's livestreaming platform. As such, Plaintiffs' alleged gaming losses do not confer standing to assert RICO claims against Kick, and their claims must be

11

dismissed as a result.

Standing problems aside, Plaintiffs' RICO allegations against Kick are nothing short of frivolous—indeed, the predicate acts alleged in the FAC do not identify any specific misconduct by Kick. *See* FAC ¶ 156. The first predicate act—wire fraud based on misrepresentations of legality—is directed entirely at Stake.us's own statements in its Terms and Conditions and on its homepage. FAC ¶ 156(b)(i). The FAC contains no corresponding allegations against Kick. The second and third predicate acts—streaming manipulation and money laundering—are alleged against Drake, Ross, and Nguyen. *Id.* ¶¶ 156(c)-(d). Kick is not alleged to have devised or participated in any alleged streaming fraud scheme, used interstate wires to further such a scheme, or conducted financial transactions to conceal proceeds. The only predicate act that references Kick at all is the operation of an allegedly illegal gambling enterprise, *id.* ¶ 156(a), in which Kick allegedly acted as "a streaming platform" and that "promote[s] Stake's illegal gambling business."[3] *Id.* ¶ 153(c). And the FAC does not allege the "time, place, and contents" of any fraudulent representation by Kick, any specific act of wire fraud by Kick, or any money laundering transaction involving Kick. The vague and conclusory allegations that Plaintiffs direct at Kick cannot possibly suffice to sustain RICO claims.

Similarly, Plaintiffs also fail to sufficiently allege a pattern of racketeering activity under Rule 9(b), or that Kick engaged in the conduct of a RICO enterprise, for the same legal grounds asserted in Stake.us's Motion. *See* Stake.us Mot. at 16-20. Indeed, Plaintiffs do not allege that Kick engaged in or benefited from any conduct related to the alleged streaming manipulation. And

---

[3] It is unclear from Plaintiffs' allegations whether they are referring to Stake.us or Stake.com in this reference to "Stake." The FAC expressly defines "Stake" to encompass both Stake.com and Stake.us interchangeably, FAC at 2 n.1, and then attributes sweeping allegations to "Stake" without specifying which entity engaged in the alleged conduct. To the extent this allegation refers to nonparty Stake.com, it only further underscores the deficiencies in Plaintiffs' attenuated theory.

12

mere allegations that Kick entered into contracts regarding livestreaming content with Drake and Ross do not remotely reflect operation or management of a RICO enterprise. *See* FAC ¶ 68. The FAC contains no allegations that Kick had knowledge of the alleged streaming manipulation operation, agreed to participate in it, or shared in the proceeds of it. Indeed, the FAC's own factual allegations suggest divergent interests—monetary benefit vs. popularity, rather than any "common purpose." Accordingly, Plaintiffs' RICO claims against Kick fail as a matter of law and should be dismissed. *See Harris v. Navy Fed. Credit Union*, No. 1:23-CV-00676, 2023 WL 5321083, at *1 (E.D. Va. July 24, 2023) (dismissing RICO claim where "Plaintiffs fail to allege any facts illustrating that Defendant committed two or more predicate acts of racketeering within a ten-year period").

Since Plaintiffs have failed to adequately allege a RICO claim, their RICO conspiracy charge under § 1962(d) also fails and should be dismissed against Kick.  18 U.S.C. § 1962(d); *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 551 n.10 (4th Cir. 2001); *Beychok v. Baffert*, No. 3:24-CV-100-CHB, 2024 WL 5112755, at *8 (W.D. Ky. Dec. 13, 2024) ("If a plaintiff cannot show an adequate injury or causation to state a substantive RICO claim, they similarly cannot maintain a conspiracy claim.").

### 3.    Plaintiffs' VCPA Claims Fail to Satisfy Rule 9(b)

Plaintiffs' VCPA claim against Kick also fails under Rule 9(b).  The VCPA prohibits the use of "deception, fraud, false pretense, false promise, or misrepresentation" by a "*supplier*" in "connection with a *consumer* transaction." Va. Code § 59.1–200(14) (emphasis added); *see also* Stake.us Mot. at 20-21.  As explained in Stake.us's Motion, the VCPA therefore requires proof of (1) reliance and (2) damages when misrepresentation of fact is alleged, as here.  *See id.*; *Curtis v. Propel Prop. Tax Funding, LLC*, No. 3:16-CV-00731-JAG, 2018 WL 717006, at *3 (E.D. Va. Feb. 5, 2018). Additionally, as is the case here, plaintiffs who seek treble damages must show the

defendant "willful[ly]" violated the VCPA. *See* Stake.us Mot. at 20 (citing *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256,260 (Va. 2014)).  Plaintiffs' VCPA claim must satisfy Rule 9(b) and identify the "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation omitted); *see also* Stake.us Mot. at 20-21.  They have not done so here.

As a threshold matter, Plaintiffs' VCPA claim against Kick fails because the FAC does not allege that Kick is a "supplier" in any "consumer transaction" with *any* Plaintiff. A supplier is a "seller" who "engages in consumer transactions."  Va. Code § 59.1-198.  A consumer transaction involves "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes[.]" *Id.*.  But Plaintiffs do not allege that Kick advertises or sells any of its own good or services.  Plaintiffs also do not allege that they purchased anything from Kick.  Instead, the FAC's own allegations make clear that Plaintiffs' claimed losses flow entirely from their alleged use of the Stake.us platform—they allegedly "paid [S]take.us for Gold Coins or Stake Cash" and allegedly lost "money . . . on that gambling." FAC ¶ 158(a). Kick is alleged to be nothing more than a streaming platform on which others broadcast content promoting Stake.us.  *See id.* ¶¶ 41, 66-67, 153(c).  In other words, the FAC treats Kick not as an independent entity that transacted with Plaintiffs, but merely as a vehicle through which promotional content was disseminated.  Absent any allegation of a consumer transaction between Kick and any Plaintiff, Plaintiffs cannot satisfy this essential element of a VCPA claim, and the claim fails at the outset. *See Richards v. Google LLC*, No. 5:25-CV-00082, 2026 WL 353617, at *8 (W.D. Va. Feb. 9, 2026) (dismissing VCPA claim where a plaintiff provided "no adequate allegations of a consumer transaction … that would state a claim under the [VCPA]").

14

Even setting aside this threshold deficiency, Plaintiffs' VCPA claim against Kick independently fails under Rule 9(b).  First, Plaintiffs fail to identify any misrepresentations made by Kick's livestreaming platform at all. Instead, Plaintiffs impermissibly group Kick with all "Defendants" in its allegations under the VCPA.  This group pleading fails to satisfy the particularity requirements of Rule 9(b).  *See, e.g.*, *Adams v. NVR Homes, Inc*., 193 F.R.D. 243, 250 (D. Md. 2000) ("A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud.").

Second, while Plaintiffs allege that they "signed up for Stake accounts in reliance on Drake's endorsement of Stake.us and after seeing his promotional content depicting Stake.us as a legitimate platform," FAC ¶¶ 14, 88, they do not claim to have seen Drake's purported endorsement or promotional content, on which they supposedly relied, on Kick.  They vaguely allude to *Ross* livestreaming gameplay and "tipping" on "Stake" (not specifically Stake.us) through Kick, but they nowhere allege they saw or relied on this livestream in registering for or using Stake.us.  *See id.* ¶¶ 73, 113-114.  Nor do they allege any facts explaining how *Kick* could plausibly be held responsible for *Drake's* purported "deception" in allegedly using Stake.us to "promote botting" to artificially inflate his streaming.  *Id.* ¶¶ 24-25.  As this Court has explained, "[g]uilt by association is not sufficient to meet the strict requirements of Rule 9(b)." *Jones v. Shooshan*, 855 F. Supp. 2d 594, 603-04 (E.D. Va. 2012) (citation omitted) (alteration in original) (dismissing fraud claims where "plaintiff [made] only vague and conclusory allegations" that one of many defendants acted fraudulently and "totally fail[ed] to specify statements or conduct to support his claim").

15

Nowhere in the FAC do Plaintiffs identify any livestream, advertisement, or promotional content on Kick's platform that they actually saw (or where and when they did so).  Nor do they allege that they viewed *any* content on Kick before using the Stake.us platform, or that they relied on any particular Kick livestream or advertisement in deciding to sign up for or use Stake.us.  *See, e.g.*, FAC ¶¶ 73, 74, 78 (describing alleged livestreams on "Stake" by Ross and Drake, without alleging any Plaintiff viewed them). This glaring lack of specificity fails to satisfy Rule 9(b). *See, e.g., Gentry v. Hyundai Motor Am., Inc.*, No. 3:13-CV-00030, 2017 WL 354251, at *7 (W.D. Va. Jan. 23, 2017) (complaint's "broad, generic references to unspecified advertisements" insufficient under VCPA), *aff'd in part, dismissed in part sub nom. Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018); *Orr v. Keystone RV Co.*, 736 F. Supp. 3d 389, 397 (E.D. Va. 2024) (allegations "insufficient to meet the normal pleading standard, much less the heightened pleading standard under Rule 9" where plaintiff "[did] not discuss a single advertisement or representation"); *Reitz v. CVY of Alexandria, LLC*, No. 1:23-CV-959 (RDA/LRV), 2025 WL 895204, at *7 (E.D. Va. Mar. 24, 2025) (reliance inadequately pled where "the only reference with respect to reliance" was a "conclusory allegation"); *Farooq v. AmeriGas Propane, Inc.*, No. 1:13CV711 LMB/IDD, 2013 WL 3894165, at *3 (E.D. Va. July 25, 2013) (Brinkema, J.) (dismissing fraud claim where complaint was "unclear and confusing as to who said what and when, and to whom; who relied on those statements"). Because Plaintiffs' claims against Kick fall far short of satisfying Rule 9(b)'s requirements, the Court should dismiss them.

### 4.    Plaintiffs Have Not Alleged a "Loss" Under the VCPA.

Plaintiffs also lack standing to bring their VCPA claims because they fail to sufficiently allege *any* loss traceable to Kick's alleged wrongdoing.  As explained in Stake.us's Motion, "one may initiate an act under the VCPA only if he or she has suffered loss" resulting from a violation

16

of the statute. *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 554 (E.D. Va. 2001) (citing Va. Code § 59.1–204(A); Va. Code § 59.1–204(A)). No such loss is alleged here.

Even if Plaintiffs had suffered an actionable loss here, it certainly was not caused by Kick. The FAC alleges only in conclusory terms that Plaintiffs suffered "ascertainable losses" including "overpayments and loss of the benefit of their bargain." FAC ¶ 168. The conduct underlying both theories of injury is the same: but for Defendants' "deceptive and misleading acts and practices" in violation of the VCPA, "including by misrepresenting the Stake platform as a safe, harmless, and legal platform" and "Drake's endorsement and advertisement of the platform," Plaintiffs "would never have become users of Stake.us." *Id.* ¶¶ 24, 165-66, 168-69. But crucially, as to Kick, Plaintiffs do not allege that any of Kick's *own conduct* constituted the "deceptive and misleading acts" that caused their losses. Nor do they identify any misrepresentation by Kick on which they relied to sign up for and spend money on Stake.us. And considering that Plaintiffs do not even allege that they personally viewed any content on Kick, the FAC unsurprisingly fails to allege any losses sustained on Kick. The FAC's failure to allege actual loss attributable to Kick leaves them without standing to assert VCPA claims against Kick. The Court should dismiss them accordingly. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 904 (C.D. Cal. 2024) (dismissing VCPA claim with prejudice where plaintiff "fail[ed] to adequately allege actual loss"). *See also Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 10-11 (D.D.C. 2019) ("The Virginia Consumer Protection Act also requires a plaintiff to plead actual loss in order to bring a suit for damages under the Act.") (citing *Polk v. Crown Auto, Inc.*, 228 F.3d 541, 543 (4th Cir. 2000)).

### 5.      Plaintiffs' Claim for Injunctive Relief Under the VCPA Fails.

To the extent Plaintiffs seek injunctive relief for their VCPA claim it should be dismissed for the reasons set forth in Stake.us's Motion. *See* Stake.us Mot. at 25.

**C.      Dismissal of Plaintiffs' Declaratory Judgment Act Claim Under 28 U.S.C. § 2201 Is Also Warranted.**

Finally, Kick adopts and incorporates by reference Stake.us's grounds for dismissal of

Plaintiffs' Declaratory Judgment Act Claim.  *See* Stake.us Mot. at 25-26.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed with prejudice, as with

Stake.us's Motion.  *See* Stake.us Mot. at 26.

Dated:  May 6, 2026

Respectfully submitted,

By: */s/ Hillary Dang*

Hillary Dang (VSB No. 92188)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

David McGill*
Diana Szego Fassbender*
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
dmcgill@orrick.com
dszego@orrick.com

Paige Pavone*
Marc R. Shapiro*
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
ppavone@orrick.com
mrshapiro@orrick.com

*Pro Hac Vice forthcoming*

*Attorneys for Defendant*
*Kick Streaming Pty. Ltd.*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I electronically filed the foregoing Motion to Dismiss on behalf of Defendant Kick with the Clerk of the Court for the United States District Court for the District of Eastern Virginia using the CM/ECF system.

*/s/ Hillary Dang*

Hillary Dang

20